**Rory MAYO, Petitioner,**

v.

**ATTORNEY GENERAL, STATE OF HAWAII, and Kase Higa, Circuit Judge of the Second Circuit, State of Hawaii, Respondents.**

**Civ. No. 81–0352.**

United States District Court,
D. Hawaii.

Dec. 14, 1981.

Earle A. Partington, Schweigert & Associates, Honolulu, Hawaii, for petitioner.

James H. Dannenberg, Deputy Atty. Gen., Tany S. Hong, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for respondents.

## DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

SAMUEL P. KING, Chief Judge.

Petitioner Mayo seeks issuance of a writ of habeas corpus declaring his conviction for rape in the Circuit Court of the Second Circuit of Hawaii was obtained in violation of his rights under the double jeopardy clause of the Fifth Amendment to the Constitution of the United States.[1]

This Court finds that the Petitioner has a valid claim under the Fifth Amendment and hereby grants his petition for a writ of habeas corpus.

### FACTS

The Petitioner was indicted for the offenses of rape and kidnapping by a Maui grand jury on September 14, 1978. He pleaded not guilty and trial was set for April 2, 1979. On the morning of April 2, 1979, before trial had begun, the trial judge, the Honorable S. George Fukuoka, called counsel for the defendant and the state into chambers for the following reported conference:

THE COURT: Okay now, this has to do with a case that's going to trial this morning: Rory Mayo's case. I just remembered it. I'd almost forgotten about it; but I just want to disclose to Counsel about a fact. About a month or two ago, I don't even remember exactly the time, Rory Mayo and a woman friend came to my home to offer me something in a package as a gift. There was no explanation made other than they wanted to give me a gift, and, of course, I declined and said I was in no position to accept anything of that sort. And they kind of, you know, tried to persuade me to accept it, and I finally convinced them that I cannot accept it, and they left.

Now, I don't think it means anything very much but I thought I better let you people know. As a matter of fact, I

1. That amendment reads, in relevant part: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb ...." U.S.Const.Am. V.

thought about it this morning, and then I thought "Now, should I disclose it before the trial or after the trial?" and I decided I better do it before the trial. So that's it.

MR. LOWENTHAL [defense counsel]: Has it affected your feelings at all about him or the case?

THE COURT: Well, I have feelings about it, but I don't think it will affect the case.

MR. LOWENTHAL: Okay.

THE COURT: Okay, anything else, so long as we're together?

Apparently no objections were made to Judge Fukuoka's sitting on the case.

Following this conference, the jury panel was sworn, voir dire was undertaken by counsel, opening statements were made and two prosecution witnesses were examined. After this, the trial was recessed for the day.

At some point during voir dire or opening statements, defense counsel stated that Mayo would be testifying in his own behalf during the trial.

The next day, before the reconvening of the trial, the state requested another in-chambers conference at which the prosecution advised the judge and defense counsel that, if Mayo were called, he would be cross-examined concerning the gift he offered to the judge. With Judge Fukuoka, the prosecutor, defense counsel, clerk and reporter, and Judge Kase Higa, the other Maui Circuit Judge, present, the following discussion took place:

THE COURT: Okay, the record would note, please, that Mr. LaFountaine [deputy prosecutor] and Mr. Lowenthal are present with me in chambers.

Yes, Mr. LaFountaine, you asked for this meeting.

MR. LAFOUNTAINE: I'd like to express our intentions at this time and the intentions on the part of the State, that when Rory Mayo, the Defendant, testifies, which we've been informed that he will, we intend to cross-examine him in the area of his attempt to deliver something

or some type of gift to your Honor, to the Judge of the case; and I want to inform the Court in advance of our intentions in that area.

THE COURT: All right. Now—

MR. LOWENTHAL: I would, of course, object to his offer to proof [sic] or offer, you know, to cross-examine on that area. It'll be irrelevant and immaterial in this case.

THE COURT: Uh-huh. Well, I had earlier disclosed to the parties about the incident that happened one or two months ago. With the declaration of intentions on the part of Mr. LaFountaine; and Mr. Lowenthal, I believe has already expressed his intention to use Mr. Mayo, the Defendant as a witness in his own behalf; I find that it's going to be necessary that I, at this point, to disqualify myself from proceeding further with the trial, and will, on that basis call a mistrial.

THE CLERK: Call a what?

THE COURT: Mistrial. And the matter will be transferred down to Judge Higa's Court, courtroom number one.

MR. LOWENTHAL: I'd like the record to reflect that it is over my objection. I would also like this aspect of the record, I take it, will be—will not be published.

THE COURT: Well, it's—not published now.

MR. LOWENTHAL: Right. Because I feel it certainly would prejudice my client should it appear in the newspaper tomorrow.

MR. LAFOUNTAINE: All I can say is they won't find about it from me.

THE COURT: Okay, so I'll inform the jury.

The case was then transferred to Judge Higa's calendar, and on June 7, 1979, he granted a defense motion to dismiss on double jeopardy grounds.

The Hawaii Supreme Court reversed this dismissal on June 3, 1980, holding that:

... under the circumstances of this case, when it became reasonably clear to the trial judge that defendant intended to

testify on his behalf and the State intended to cross-examine defendant on matters involving his participation in the purported gift to the trial judge, in order to attack defendant's credibility because evidence as to his identification was circumstantial, and there is reason to believe that the trial judge could be called as a witness, the trial court did not abuse its discretion in declaring a mistrial sua sponte as there was manifest necessity to do so.

*State of Hawaii v. Mayo*, 62 Haw. 108, 111, 612 P.2d 107 (1980).

In 1980, Mayo was retried, but a hung jury resulted. In 1981, a third trial ended in Mayo's conviction for rape.[2]

DISPOSITION

The Petitioner's suit comes before this Court under 28 U.S.C. § 2254, after Petitioner exhausted all available state judicial remedies in conformance with that section.

This Court is thus presented with the question whether Petitioner's second and third trials and his ultimate conviction were in violation of the double jeopardy clause.

First, the double jeopardy clause has been held to apply to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Therefore, if Mayo's conviction in state court contravened the strictures of that clause, the conviction cannot stand.

Second, jeopardy initially attached with the swearing in of the jury at the first trial. *See Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957). Absent a valid reason for terminating the first trial, Mayo could not then be retried for the same offense.

■ When the trial judge declares a mistrial *sua sponte* over the defendant's objections, the determination whether there was a valid reason for ending the trial is governed by the manifest necessity test. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1977); *United States v.*

*Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (Story, J.) (first articulation of manifest necessity test).

During the past twenty years or so, there has been substantial judicial exegesis concerning the manifest necessity requirement. Most recently, the Supreme Court has described the test as follows:

... Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of defendant.

*Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1977).

In other words, if there was no manifest necessity to terminate Mayo's first trial, then his subsequent trials and conviction violated the double jeopardy clause.

■ This Court finds that there was no manifest necessity to terminate Mayo's first trial.

First, there is considerable reason to believe that any testimony elicited from Mayo on cross-examination would have been inadmissible. Rule 608(b) of the Hawaii Rules of Evidence states that:

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, ... may not be proved by extrinsic evidence. They may, how-

---

**2.** Petitioner testified at this third trial. The court granted a defense motion *in limine* to exclude evidence of the alleged gift because its

prejudicial value outweighed its probative value.

ever, in the discretion of the court, *if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, .... (Emphasis added.)

Although Rule 608 was not promulgated until 1981, the Commentary to the rule indicates that the same principle applied in the common law at the time of Mayo's trial:

Subsection (b): This allows cross-examination of the witness relative to specific collateral conduct *to the extent that such conduct is relevant to veracity. Such conduct may not be independently proved even if the witness expressly denies it.* Previous law was to the same effect, see *Territory v. Goo Wan Hoy,* 24 H. 721, 727 (1919), ....

The rule also applies to any defendant who elects to testify. In *State v. Pokini,* 57 H. 17, 22–23, 548 P.2d 1397, 1400–01 (1976), the court observed: "[O]nce having taken the witness stand in his behalf, the defendant may be cross-examined on collateral matters bearing upon his credibility, the same as any other witness .... The defendant may be asked questions regarding his occupation or employment .... *But there are obvious limitations beyond which the court may not allow the examiner to venture. The subject matter of inquiry must have some rational bearing upon the defendant's capacity for truth and veracity ....* And where the testimony sought to be elicited is of minimal value on the issue of credibility and comes into direct conflict with the defendant's right to a fair trial, the right of cross-examination into those areas must yield to the overriding require-

ments of due process. See *State v. Santiago,* 53 H. 254, 492 P.2d 657 (1971) ...." (Emphasis added.)

From the preceding, it is evident that, were Mayo cross-examined, he could not have been questioned concerning his attempt to give Judge Fukuoka a gift, for such evidence would have no bearing upon the "defendant's capacity for truth and veracity." At most, the prosecution would have been attempting to impeach the credibility of the defendant by bringing in evidence of the defendant's "bad acts." Such evidence is clearly inadmissible.[3]

Moreover, even assuming that the defendant might have been questioned concerning the attempted gift, the rule states flatly that no extrinsic evidence of that conduct would have been admissible. Any attempt to call Judge Fukuoka to testify concerning those events, therefore, would have been unsuccessful.[4]

Second, even if the rules of evidence permitted cross-examination concerning the attempted gift, the record indicates that it was far from certain that the judge would have been called upon to testify. Despite defense counsel's statements that defendant would testify, he was not required to do so and might actually have decided not to testify in the face of the prosecution's stated intention of questioning Mayo about his visit to the judge. More importantly, the judge appears never to have explored with counsel the probability that his testimony would be necessary. The defendant's willingness to admit the attempted gift would have, of course, obviated the need for the judge's testimony. That Mayo would not have denied his visit to the judge seems

---

**3.** At the second in-chambers conference, counsel for defendant asserted that he would object to any effort to question the defendant concerning the attempted gift. At Mayo's third trial, such an objection appears to have been sustained.

**4.** In addition, this Court believes there is reason to doubt whether the trial judge would have had to testify even if called. Rule 605 of the Hawaii Rules of Evidence declares that: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be

made in order to preserve the point." Although this rule was not promulgated until January 1, 1981, almost two years after Mayo's first trial, there is substantial authority to support the notion that a judge is incompetent to testify at a trial over which he is presiding. *See, e.g.,* Fed.R.Evid. 605, McCormick, Handbook of the Law of Evidence § 68, at 147 & n.77 & cases cited therein (2d ed. 1972). *But see* 6 Wigmore, Evidence § 1909, *esp.* n.5 & authorities cited therein (Chadbourn rev. 1976).

likely, inasmuch as he would have exposed himself to a perjury charge by denying it.

Finally, this Court recognizes that Judge Fukuoka's decision to terminate the trial was founded on a commendable concern that the impartiality of the proceedings be unimpeached. As commendable as that motive was, there was a step the judge might have taken, short of declaring a mistrial, that would still have preserved the Petitioner's "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

Rule 25(a) of the Hawaii Rules of Penal Procedure, in effect at the time of Petitioner's trial, provides that, "[i]f by reason of . . . disqualification, the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial." Thus, it appears that Judge Fukuoka might simply have transferred the trial to another judge without having had to terminate the one before him. Such a procedure would have both effectively prevented any possible taint arising from the Petitioner's attempted gift and also would have made a mistrial unnecessary.

This Court is cognizant of the Supreme Court's command that review of a finding of manifest necessity be tempered by respect for the trial judge's exercise of his discretion, and that an explicit finding of manifest necessity by the trial judge "is not constitutionally mandated." *Arizona v. Washington,* 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1977). Nevertheless, based on the preceding analysis, this Court finds that inadequate attention was paid at Petitioner's first trial to how the declaration of a mistrial would affect the double jeopardy rights of the accused (*Cf. id.* at 515–16, 98 S.Ct. at 835–36.), or to how a mistrial could be avoided, or to whether a mistrial was in fact necessary. Had these inquiries been undertaken, it would have become apparent that no manifest necessity existed to declare a mistrial.

Under these circumstances, this Court finds and concludes that Petitioner's second and third trials, and his ultimate conviction, were in violation of his rights under the double jeopardy clause.

THEREFORE, IT IS HEREBY ORDERED that Petitioner Mayo's Petition for a Writ of Habeas Corpus is GRANTED and A WRIT OF HABEAS CORPUS SHALL ISSUE AS PRAYED FOR.