**STATE OF HAWAI'I**, Plaintiff–Appellant v. **THUAN VAN LAM**, Defendant–Appellee

NO. 15868

(CR. NO. 89–1076)

AUGUST 26, 1993

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

## OPINION OF THE COURT BY KLEIN, J.

Appellant State of Hawai'i (prosecution) appeals from a dismissal, on double jeopardy grounds, of the murder charge against Defendant–Appellee Thuan Van Lam. An unrequested mistrial was declared by the trial court during Lam's first trial. When the prosecution instituted a subsequent murder trial, Lam successfully moved for a dismissal. The prosecution argues that either Lam's consent to the mistrial or manifest necessity requires a reversal of the lower court's order of dismissal. We affirm.

## I. **Facts**

As a result of the death of Huong T. Quach, Lam was indicted for Second Degree Murder in violation of Hawai'i Revised Statutes (HRS) § 707–701.5(1) (1992). In his opening statement, the prosecutor indicated that Patrick Hollander would testify that prior to Quach's death, Lam stated something to the effect of "If I cannot have her [Quach] then nobody can" and "I'm going kill her [Quach]."

The prosecutor's attempt to elicit this testimony from Hollander during the trial was unsuccessful. Hollander maintained that he could not recall making such statements.[1] The prosecutor's effort to refresh Hollander's memory by having him read a copy of his oral statement given to the police was similarly unsuccessful because Hollander claimed to be dyslexic. The prosecutor then requested the court to allow an oral reading of the report. The court refused because Hollander had never reviewed the report, and the officer who obtained Hollander's statement was unavailable to authenticate it. Lam argued that his right to confront Hollander would be violated if he were unable to use the report to cross–examine Hollander. The court agreed and disallowed any use of the unauthenticated report.

During Hollander's subsequent testimony, the prosecutor renewed his attempt to gain the favorable testimony alluded to in his opening statement by asking a number of leading questions. When it became apparent that Hollander was not able to testify from an independent recollection of the events, the court suggested terminating

---

[1] Hollander did testify that he was a friend of both Lam and Quach and that he talked to Lam about Lam's relationship with Quach. Hollander also testified that he observed fights between the couple.

Hollander's entire direct examination. The prosecutor reacted by calling for a recess to reorganize his case.

Just prior to the recess, the court commented, "I don't think you can talk to the witness [Hollander] during the recess even though he is your witness." The prosecutor responded, "Okay. Let me — okay. Let me just see what I can do at this point." During the recess, the prosecutor nevertheless spoke with Hollander, and Lam later brought the matter to the court's attention. The prosecutor admitted talking to Hollander, but contended that he was unaware of an order preventing the discussion.[2]

Lam reiterated his concern that Hollander's testimony was tainted by a lack of independent recollection and that Hollander was being "fed" the information the prosecutor wanted him to have. The court acknowledged the problem, stating, "I think as a question of fairness and rather than declaring a mistrial at this point the Court is going to strike this witness' testimony."[3] The prosecutor countered by emphasizing the importance of Hollander's testimony to his case, prompting the court to respond, "Then what the Court is forced to do is declare a mistrial." The judge, however, considered his ruling during a recess.

After the recess, over an objection from both sides, the court, *sua sponte*, declared a mistrial and discharged the jury. The court failed to give any reasons for declaring the mistrial, instead noting, "I think the record speaks for itself."

---

[2] At a subsequent hearing on Lam's motion to dismiss, the motions judge found in Conclusions of Law no. 4(c) that "[t]he deputy prosecutor did not commit misconduct by speaking to Hollander during the recess because the court did not ever bar the prosecutor from doing so."

[3] Lam had, on numerous occasions, renewed his objection to Hollander's testimony, requesting that it be stricken.

Lam was subsequently re–charged with second degree murder, and his motion to dismiss based on double jeopardy grounds was argued before the motions judge. Lam claimed that he never consented to the mistrial and that there was no manifest necessity to support the declaration of a mistrial. The motions judge agreed with Lam and denied the prosecution's request to have the trial court explain his reasons for declaring the mistrial. The motions judge then granted Lam's motion to dismiss on double jeopardy grounds and denied the prosecution's motion for reconsideration.[4]

## II. **Discussion**

When a trial ends without a judgment, the defendant's constitutional right to "have his trial completed by a particular tribunal" still exists. *Arizona v. Washington*, 434 U.S. 497, 503 (1978).

> The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists

---

[4] Prior to the reconsideration hearing, the prosecutor filed a Request for Written Findings of Fact and Conclusions of Law for the Declaration of the Mistrial and appeared before the trial court. The court denied the request, stating that it was "outside of its jurisdiction" because, at that point, the charges against Lam had been dismissed.

whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Id.* at 503–05. *See also **State v. Moriwake***, 65 Haw. 47, 51–52, 647 P.2d 705, 709–10 (1982). Generally, "[a] State may not put a defendant in jeopardy twice for the same offense." ***Washington***, 434 U.S. at 503 (1977) (citing ***Benton v. Maryland***, 395 U.S. 784 (1969)); *see* U.S. CONST. amend. V; *see* HAWAI'I CONST. art. I, § 10.

While the 5th and 14th amendments of the United States Constitution and Article I of the Hawai'i Constitution protect a defendant from being tried twice for the same crime, "retrial is not automatically barred [by double jeopardy] when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." ***Washington***, 434 U.S. at 505.

Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial be concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

***Moriwake***, 65 Haw. at 52, 647 P.2d at 710 (citing ***Washington***, 434 U.S. at 505). Case law requires a balance between the rights of the accused and the public interest. Both are vitally important to our judicial system, and each must be considered in the context of the trial court's rulings.

Because the declaration of a mistrial is discretionary on the part of the trial court, we review the court's action on an abuse of discretion standard. *See **United States v. Perez**,* 22 U.S. (9 Wheat.) 579, 580 (1824); ***Moriwake**,* 65 Haw. at 52, 647 P.2d at 710.

In the instant case, jeopardy attached upon the impaneling and swearing in of the jury. *See **Moriwake**,* 65 Haw. at 51, 647 P.2d at 709. The court's *sua sponte* declaration of a mistrial prior to receipt of the jury's verdict requires us to review the circumstances under which reprosecution is permitted. "Where a mistrial is declared without the consent of the defendant, and there is an absence of manifest necessity for the mistrial, a retrial will be barred by double jeopardy." ***State v. Pulawa**,* 58 Haw. 377, 379, 569 P.2d 900, 903 (1977), *cert. denied,* 436 U.S. 925 (1978) (citations omitted). The double jeopardy bar thus focuses on two factors: 1) defendant's consent; and 2) manifest necessity.

## A. Consent

We first address the question of whether Lam consented to the Court's declaration of a mistrial. If a defendant voluntarily moves for a mistrial[5] or consents to a mistrial based on the prosecution's or court's motion, his right to double jeopardy protection is considered waived. ***Pulawa**,* 58 Haw. at 382, 569 P.2d at 904–05. Consent to a mistrial may be explicit or implicit.

Explicit consent arises when a defendant voluntarily moves or argues for a mistrial. *Id.* at 381, 569 P.2d at 904.

---

[5] If a defendant is "forced" to move for a mistrial due to prosecutorial or judicial misconduct intended to provoke the defendant to move for the mistrial, double jeopardy bars reprosecution. ***State v. Hamala**,* 73 Haw. 289, 294, 834 P.2d 275, 277–78 (1992).

In such a situation, the defendant may be retried. *Id.* at 382, 569 P.2d at 905. Here, Lam did not request a mistrial and, in fact, objected to the grant of a mistrial.

A defendant may implicitly consent to a mistrial through his conduct.

> Examples of cases where waiver has been found include those where the defendant failed to raise a double jeopardy claim at trial, or in a timely manner; where a defendant pleaded no contest to a criminal charge; where a defendant sought a continuance at trial; where a defendant chose to oppose prosecution's motion to consolidate; and where a defendant sought a new trial after being convicted.

*State v. Miyazaki*, 64 Haw. 611, 618–19, 645 P.2d 1340, 1346 (1982) (citations omitted); *see also Anderson v. United States*, 481 A.2d 1299 (D.C. App. 1984); *People v. Lovinger*, 130 Ill. App. 3d 105, 473 N.E.2d 980, *cert. denied*, 474 U.S. 919 (1985); *State v. White*, 369 N.W.2d 301 (Minn. App. 1985), *cert. denied*, 474 U.S. 1057 (1986); *People v. Ferguson*, 67 N.Y.2d 383, 494 N.E.2d 77, 502 N.Y.S.2d 972 (1986). The actions of a defendant and the facts of a case must be examined to determine whether a defendant implicitly consented to a mistrial. In the instant case, defense counsel explicitly objected to the mistrial. Although the prosecution concedes this fact, it nevertheless claims that Lam's silence when the court first considered a mistrial represents implied consent. During a bench conference regarding Hollander's testimony, the following discussion took place:

> THE COURT: And my problem is this, that based upon the actions so far of the witness and from what we learned this morning, I don't think we can use this witness' testimony.

\* \* \* \*

THE COURT: Except [Defense Counsel's] opportunity to cross–examine has been limited. I think as a question of fairness and rather than declaring a mistrial at this point the Court is going to strike this witness' testimony.

[PROSECUTOR]: Your Honor, this is the meat of my case right here with respect to motive. Motive is important.

THE COURT: That may be. Then what the Court is forced to do is declare a mistrial.

[PROSECUTOR]: Well, that's at the Court's discretion, your Honor. This is the — you know, this is a very important witness in the State's case.

THE COURT: All right. We'll take a recess. The Court will rule in ten minutes.

(Recess taken.)

THE COURT: . . . At this time it is the Court's ruling that the Court is going to declare a mistrial in this case.

\* \* \* \*

[DEFENSE COUNSEL]: The Court has ruled, I understand that. But let the record reflect that it would be over the objections of the defense also . . . .

The prosecution argues that by failing to object before the recess, Lam implicitly consented to the mistrial. We disagree because Lam had no duty to object to the mistrial prior to the recess. Lam provided the court with an alternative to declaring a mistrial by requesting that Hollander's testimony be stricken. In addition, Lam voiced his objection to the court's declaration of a mistrial. He had no further duty.

The prosecution also contends that when Lam called the prosecution's discussion with Hollander to the court's attention, he implicitly consented to the mistrial. Lam, however, coupled his revelation to the court with a request to limit Hollander's testimony.[6] This conduct can hardly raise the implication of consent. Under these facts, we hold that Lam did not implicitly or explicitly consent to a mistrial.

## B. **Manifest Necessity**

The second issue is whether manifest necessity required the declaration of a mistrial, thus allowing Lam's subsequent prosecution. "[The] principles of double jeopardy pose no bar to reprosecution after discharge of a jury if there was a 'manifest necessity for . . . [the mistrial], or the ends of public justice would otherwise be defeated.'" *Moriwake*, 65 Haw. at 51, 647 P.2d at 709 (citing *Perez*, 22 U.S. (9 Wheat.) at 580).[7] Manifest neces-

---

[6] Throughout Hollander's testimony, Lam's attorney requested that Hollander's testimony be stricken. Then, after informing the court of the conversation between Hollander and the prosecutor during the recess, Lam's attorney stated, "[I]t's gotten to a point now . . . [that] we can't have him testify any further on any other conversation."

[7] No case we found interprets the phrase "the ends of public justice would otherwise be defeated." "Public justice," however, would seem to implicate both the right of the defendant to a full and fair trial before a single tribunal as well as the public's right to have the prosecution present its evidence to an impartial panel. *See* p.5, *supra*. Our analysis of the phrase "manifest necessity" arrives at the same point: unless manifest necessity dictates the court's declaration of a mistrial, "the ends of public justice" cannot be said to have been "defeated." Although *Pulawa* and *Mayo* did not include this specific language from *Perez*, we have consistently followed the federal standard. *See Moriwake*, 65 Haw. at 53, 647 P.2d at 710.

sity is defined as a "sudden and overwhelming emergency beyond control of court and unforeseeable. . . . [W]here, due to circumstances beyond control of parties and court, it becomes no longer possible to conduct trial or to reach a fair result based upon the evidence." BLACK'S LAW DICTIONARY 963 (6th ed. 1990). The United States Supreme Court has noted that there is no "standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Washington*, 434 U.S. at 506.

"[I]t is impossible to define all the circumstances, which would render it proper to interfere [by declaring a mistrial]." *Perez*, 22 U.S. (9 Wheat.) at 580. "Which of the 'variety of circumstances' resulting in mistrial declarations rise to the level of 'manifest necessity' so as to allow reprosecution has been the subject of much discussion." *Moriwake*, 65 Haw. at 52, 647 P.2d at 710; *See generally* Schulhofer, *Jeopardy and Mistrials*, 125 U. PA. L. REV. 449 (1977).

"[T]here are especially compelling reasons for allowing a trial judge to exercise broad discretion in deciding whether or not manifest necessity [exists]." *Moriwake*, 65 Haw. at 52, 647 P.2d at 710 (citing *Washington*, 434 U.S. at 509). Thus, great deference will be given to the trial court when it finds manifest necessity. *See Washington*, 434 U.S. at 510–13; *Moriwake*, 65 Haw. at 52–53, 647 P.2d at 710–11. Because manifest necessity is a high standard not to be declared lightly, a trial judge should record his or her reasons for declaring a mistrial and include the reasons for finding manifest necessity.

When examining the record for evidence of manifest necessity, one factor to be regarded is whether the trial court sufficiently considered the alternatives. *State v.*

*Mayo*, 62 Haw. 108, 111, 612 P.2d 107, 110 (1980).[8] A trial court must consider the options available and factor them into the balance between the accused's rights and the public interest.

In the instant case, the lack of a finding of manifest necessity on the record prevents us from deferring to the trial court. The issue narrows to whether, inasmuch as Hollander had partially testified, the trial court could have taken meaningful, alternate action while protecting Lam's right to a fair trial. We conclude that the court's mistrial declaration was not supported by manifest necessity, because less severe options were available that would have protected both Lam's rights and the public's interest.

Hawai'i Rules of Evidence (HRE) Rule 602[9] requires a witness to have personal knowledge of the matter to which he or she is testifying. After the recess, when the prosecutor spoke with Hollander, the trial court's concern was that, on the crucial issue of Lam's inculpatory statements, Hollander would not be able to testify based upon his own recollection, but would instead recite what the prosecutor might have told him during the recess.

---

[8] *But see Mayo v. Attorney General, State of Hawai'i*, 528 F. Supp. 833 (D. Haw. 1981), *aff'd*, 692 F.2d 595 (9th Cir. 1982), *cert. denied*, 461 U.S. 948 (1983). In federal court, Mayo obtained a writ of habeas corpus on the ground that no manifest necessity existed for the mistrial. The court found that the trial judge did not sufficiently examine the alternative measures available, such as reassigning the case to another judge.

[9] HRE Rule 602 provides in pertinent part:
A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

The trial court, nevertheless, could have terminated the prosecutor's further questioning of Hollander and limited Lam's cross–examination to testimony previously given. This would have prevented Hollander from testifying to any matters discussed with the prosecutor during the recess, and the danger created by the discussion would have been eliminated.

Another available option was to hold a hearing outside the jury's presence to determine the extent of Hollander's personal recollection of the events and whether he could testify from his own memory of them. Had such a hearing been conducted, the trial court would have been better able to evaluate Hollander's testimony and determine an appropriate course of action. During the hearing, the prosecutor could have the written report read to Hollander, pursuant to HRE Rule 612,[10] and it could have then been determined whether the report refreshed Hollander's recollection. If so, Hollander could have testified accordingly.

Furthermore, the trial court could have stricken all of Hollander's testimony, as it first indicated it would do.[11] This solution would have obviated the need for declaring a mistrial. It was only after the prosecutor noted the importance of Hollander's testimony that the

---

[10] Under HRE Rule 612, the statement or report does not need to be authenticated. The writing merely serves to refresh the witness' present memory and is not evidence, although the adverse party may enter the writing into evidence.

[11] After striking the testimony, the judge would have advised the jury to disregard it. By stating that he was going to strike the testimony, the judge apparently felt that the jury could follow such an instruction in accordance with the presumption that juries abide by the court's admonition to disregard testimony. *State v. Pemberton*, 71 Haw. 466, 475, 796 P.2d 80, 84 (1990) (citations omitted).

trial court declared a mistrial. Hollander's claimed importance as a prosecution witness does not constitute manifest necessity.

Finally, the trial court could have delayed the trial pending authentication of Hollander's report by the police officer who took Hollander's statement.[12] If successful, this would have allowed the prosecution to use Hollander's statement as past recollection recorded pursuant to HRE 802.1(4).[13]

Although the situation presented was an unusual one, the trial court could have resorted to several alternative measures to protect Lam's right to a fair trial and advance the public interest in having the trial concluded by a particular tribunal. Given the available alternatives and the fact that the trial court failed to fully consider them,[14] we cannot say that manifest necessity required the declara-

---

[12] The officer was off island for the week and according to the Prosecution, would be back and available the following week.

[13] HRE Rule 802.1 provides in pertinent part:

> The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> * * *
>
> (4) Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

[14] The trial court may have considered these alternatives and determined that none would sufficiently solve the difficult situation that presented itself. It may have then concluded that a mistrial was the only appropriate alternative. If this were the case, the record should have

tion of a mistrial. We therefore hold that the trial court abused its discretion in declaring the mistrial.

## C. **Trial Findings**

The final question is whether the motions judge erred in refusing to require the trial court to make specific findings regarding its reasons for declaring the mistrial. Although *any* findings from the trial court would have been helpful, as we have stated, our search of the record reveals that a number of alternatives were available to the trial court short of declaring a mistrial. Where this is so, no declaration of a mistrial based upon manifest necessity can be supported and it was therefore unnecessary to obtain specific findings from the trial court. We hold that the motions judge did not err in denying the prosecution's request.

## III. **Conclusion**

Because Lam was subjected to former jeopardy in his first trial and the trial court erroneously declared a mistrial without Lam's consent or a showing of manifest necessity, reprosecution is barred by the double jeopardy provisions of the United States and Hawai'i Constitutions. The circuit court's order of dismissal is affirmed.

On the briefs:

*Caroline M. Mee*, Deputy Prosecuting Attorney, for plaintiff–appellant.

*Joyce K. Matsumori–Hoshijo*, Deputy Public Defender, for defendant–appellee.

---

included a discussion of the alternatives and the reasons for their rejection. When declaring a mistrial, in the interest of both parties, a trial court should record its reasons for finding manifest necessity as well as its rationale for declining to take other alternate actions.