903 P.2d 1282

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Albert Allen MINN, Defendant–Appellant.**

No. 17803.

Supreme Court of Hawai'i.

Oct. 5, 1995.

Eric C. Sacks (Reginald P. Minn, with him on the briefs), Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Defendant-appellant Albert Allen Minn (Defendant) was charged with second degree theft. During its deliberations, the jury requested a transcript of Honolulu Police Officer Richard Wheeler's testimony because it was "split on whether value [of the items allegedly stolen] ha[d] been established beyond a reasonable doubt." After additional requests for the transcript were denied by the trial court, the jury communicated that it was deadlocked on the issue of value and that no further deliberations would be helpful. The trial court then declared a mistrial over the objection of Defendant. Thereafter, Defendant filed a motion to dismiss the complaint on double jeopardy grounds. The trial court denied Defendant's motion, and Defendant appealed. On appeal, Defendant argues that manifest necessity did not support the declaration of a mistrial because the trial court failed to consider the following less severe alternatives: (1) giving the jury a transcript of Officer Wheeler's testimony; and (2) polling and reinstructing the jury regarding its duty to arrive at a unanimous verdict.

For the reasons set forth below, we disagree and affirm the trial court's order denying Defendant's motion to dismiss the complaint.

## I. FACTUAL BACKGROUND

On February 3, 1993, Defendant was charged with theft in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 708–831(1)(b) (Supp.1992).[1] Jury trial commenced on July 16, 1993. At trial, Albert Cazinha, a loss prevention officer, testified that he observed Defendant browsing the jewelry department of the J.C. Penney store in the Ala Moana Shopping Center on January 22, 1993. According to his testimony, Cazinha observed Defendant place various items into his pockets and leave the store without paying for them. Cazinha testified that the stolen items included necklaces, bracelets, earrings, and watches.

After Defendant had walked about twenty-five feet outside the store, Cazinha stopped Defendant and escorted him to the store

---

1. HRS § 708–831(1)(b) provides in relevant part that "[a] person commits the offense of theft in the second degree if the person commits theft ... [o]f property or services the value of which exceeds $300."

security office where Defendant was searched and the stolen items were recovered. Deanna Strikolis, another loss prevention officer, testified that she made a list of all the items as they were recovered. Strikolis further testified that each item had a price tag and that the total value of the items recovered from Defendant was $548.94.

Officer Wheeler, who arrested Defendant, testified that: (1) he was present during the recovery of the allegedly stolen items; (2) he could not individually identify, from a photograph of the merchandise, the different items allegedly taken by Defendant; and (3) the price tags on the items could not be seen in the photograph.

After Officer Wheeler's testimony, Defendant rested without making an opening statement or presenting any evidence. The court then instructed the jury on the elements of second degree theft and the included offenses of third degree theft, under HRS § 708–832(1)(a) (Supp.1992),[2] and fourth degree theft, under HRS § 708–833(1) (Supp. 1992).[3]

On July 20, 1993, the jury requested a copy of Officer Wheeler's testimony during its deliberations. The trial court denied the request and replied, "[p]lease rely on your collective recollections." That same day, the jury communicated to the trial court that it was split on whether the value of the items was established beyond a reasonable doubt but felt that "the testimony of Officer Wheeler could affect their positions." Over Defendant's objections, the court inquired whether further deliberations would be of assistance. The jury responded that further deliberations would not be of assistance without a transcript of Wheeler's testimony. The court again instructed the jury to "please rely on your collective recollection of Officer Wheeler's testimony." A short time later, the jury communicated that they could not agree on

whether the prosecution had established the value of the items beyond a reasonable doubt and that further deliberation would not help in resolving the issue. Thereafter, the trial court, over the objection of Defendant, declared a mistrial *sua sponte*. In declaring the mistrial, the court stated in relevant part:

> the record will note that the jury has been deliberating for a full day and a half since the case was submitted to the jury yesterday about 11:25 AM. The issue in this case was a relatively simple one. It was, one, whether or not the defendant was— was charged with the offense of shoplifting and the jury was unable to reach a verdict. . . . [T]he evidence was presented to the jury in just one full day. . . .
>
> . . . .
>
> Accordingly I will declare a mistrial and I would like to thank the jury for your service.

On October 12, 1993, Defendant moved to dismiss the complaint on the basis that a retrial would violate his right against double jeopardy. On January 5, 1994, the trial court entered an order denying Defendant's motion, concluding that the court was not required to give a transcript or any other instructions to the jury. Thereafter, Defendant filed his notice of appeal on January 10, 1994.

## II. *STANDARD OF REVIEW*

The issue whether a defendant's constitutional right against double jeopardy will be violated unless an indictment or complaint is dismissed is a question of law. *State v. Baranco,* 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994) (citing *United States v. Bernhardt,* 831 F.2d 181, 182 (9th Cir.1987)). We review questions of law under the right/wrong standard. *Id.; In re Estate of Holt,* 75 Haw. 224, 857 P.2d 1355, *reconsideration denied,* 75 Haw. 580, 863 P.2d 989 (1993).

---

2.  HRS § 708–832(1)(a) provides in relevant part that "[a] person commits the offense of theft in the third degree if the person commits theft . . . [o]f property or services the value of which exceeds $100."

3.  HRS § 708–833(1) provides in relevant part that "[a] person commits the offense of theft in the fourth degree if the person commits theft of property or services of any value not in excess of $100."

However, the declaration of a mistrial is discretionary on the part of a trial court. Therefore, we review the trial court's action under an abuse of discretion standard. *State v. Lam,* 75 Haw. 195, 201, 857 P.2d 585, 589 (1993); *State v. Moriwake,* 65 Haw. 47, 52, 647 P.2d 705, 710 (1982).

## III. *DISCUSSION*

### A. *Jurisdiction*

Plaintiff-appellee State of Hawai'i (the prosecution) contends that this court lacks jurisdiction under HRS § 641–11 (Supp.1992) [4] to entertain this appeal because Defendant failed to obtain permission from the trial court before pursuing the instant interlocutory appeal as required by HRS § 641–17 (1985).[5] We disagree. While we generally require the trial court's permission before bringing an interlocutory appeal, we have held that such permission is not necessary where the trial court denies a pretrial motion to dismiss an indictment on double jeopardy grounds. *State v. Baranco,* 77 Hawai'i 351, 354–55, 884 P.2d 729, 732–33 (1994). Therefore, because Defendant has appealed from the order denying his pretrial motion to dismiss the complaint on double jeopardy grounds, we have jurisdiction to entertain Defendant's appeal.

### B. *Double Jeopardy*

Defendant contends that a retrial would violate his right against double jeopardy because manifest necessity did not support the circuit court's declaration of a mistrial. Both the United States and Hawai'i Constitutions prohibit any person from being placed twice in jeopardy for the same offense. U.S. Const. amend. V; Haw. Const. art. I, § 10.[6] In *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978), the United States Supreme Court recognized that a second prosecution may increase the financial and emotional burden on the accused, prolong the period in which he or she is stigmatized by an unresolved accusation of wrongdoing, and enhance the risk that an innocent defendant may be convicted.

However, double jeopardy does not automatically bar reprosecution "whenever a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Id.* at 505, 98 S.Ct. at 830; *accord Lam,* 75 Haw. at 200, 857 P.2d at 589. Previous case law in this state requires a balancing of the rights of the accused and the public interest. *See, e.g., Lam,* 75 Haw. at 200, 857 P.2d at 589. Where a mistrial is declared without the consent of the defendant and without manifest necessity, reprosecution will be barred by double jeopardy. *Id.* at 201, 857 P.2d at 589 (citing *State v. Pulawa,* 58 Haw. 377, 379, 569 P.2d 900, 903 (1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978)). Because the record is clear that Defendant explicitly objected to the trial court's declaration of a mistrial, we must determine whether manifest necessity existed to warrant the mistrial.

"Manifest necessity" is defined as a "sudden and overwhelming emergency be-

---

**4.** HRS § 641–11 provides:
**From circuit courts.** Any party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawai'i Rules of Appellate Procedure. The sentence of the court in a criminal case shall be the judgment. All appeals, whether heard by the intermediate appellate court or the supreme court, shall be filed with the clerk of the supreme court and shall be subject to one filing fee.

**5.** HRS § 641–17 provides in relevant part:
[A]n appeal in a criminal matter may be allowed to a defendant from the circuit court to the supreme court ... from a decision denying a motion to dismiss or from other interlocutory orders, decisions or judgments, whenever the judge in the judge's discretion may think the same advisable for a more speedy termination of the case. The refusal of the judge to allow an interlocutory appeal to the appellate court shall not be reviewable by any other court.

**6.** *Accord* HRS § 701–110(4) (1985) (barring reprosecution "for an offense under the same statutory provision and ... on the same facts as a former prosecution" if the former prosecution was improperly terminated).

yond control of court and unforeseeable" and occurs when it becomes impossible to conduct the trial further or to reach a fair result based upon the evidence. *Lam*, 75 Haw. at 205, 857 P.2d at 590 (quoting Black's Law Dictionary, 963 (6th ed. 1990)). "[A] mistrial ordered *sua sponte* because of a true inability of the jury to agree upon a verdict represents the 'classic example' of manifest necessity." *State v. Moriwake*, 65 Haw. 47, 51, 647 P.2d 705, 710 (1982) (citations omitted).[7]

■ When examining the record for evidence of manifest necessity, we must determine whether the trial court sufficiently considered the alternatives available. *Lam*, 75 Haw. at 205, 857 P.2d at 591 (citing *State v. Mayo*, 62 Haw. 108, 111, 612 P.2d 107, 110 (1980)). Even though a "hung jury" constitutes a "classic example" of manifest necessity, a trial court must first consider less severe options available and balance the accused's rights against the public interest. *Lam*, 75 Haw. at 206, 857 P.2d at 591.[8] As noted above, we review the trial court's action under an abuse of discretion standard. *Lam*, 75 Haw. at 201, 857 P.2d at 589; *Moriwake*, 65 Haw. at 52, 647 P.2d at 710.

The dispositive issue therefore is whether the trial court abused its discretion in (1) denying the jury's request for a transcript of Officer Wheeler's testimony and (2) refusing to reinstruct the jury regarding their duty to deliberate towards arriving at a unanimous verdict.

### 1. *Transcript of Officer Wheeler's Testimony*

Defendant contends that manifest necessity did not support the trial court's declaration of a mistrial because less severe options were available that would have protected both Defendant's rights and the public interest. According to Defendant, the court abused its discretion by failing to grant the jury's repeated requests for a transcript of Officer Wheeler's testimony. We disagree.

■ Although we have not addressed the specific issue of whether a jury may review transcripts of testimony during deliberations, the decision whether to allow a read back of testimony to a jury during deliberations is a matter within the sound discretion of the trial court. *Medeiros v. Udell*, 34 Haw. 632, 638 (1938). However, this court has held that an arbitrary denial of a jury's request for a "read back" of a witness's testimony during deliberations constitutes an abuse of discretion. *State v. Estrada*, 69 Haw. 204, 228–29, 738 P.2d 812, 828 (1987). We have also held that a "read back" of a witness's testimony constitutes an abuse of discretion where such a read back results in prejudice to a party or an improper influence on the jury. *See Estrada*, 69 Haw. at 229, 738 P.2d at 828 (where the testimony of the second witness contradicted the testimony of the first witness, this court held that the arbitrary exclusion of the testimony of the second witness may have improperly influenced the jurors into believing that the testimony of the first witness was more important than the second witness).

As to the issue of transcripts, the view of a majority of the jurisdictions that have considered the question is that the decision to allow or refuse a jury's request to review a transcript of a witness's testimony is within the discretion of the trial court. *See, e.g., People v. Coleman*, 179 Ill.App.3d 410, 452, 128 Ill.

---

7. HRS § 701–110(4)(b)(iv) (1985) also provides in relevant part that termination of former prosecution is not improper if the trial court finds the termination necessary because "the jury is unable to agree on a verdict."

8. In *Lam*, this court held that a mistrial declaration was not supported by manifest necessity because less severe options were available that would have protected both the defendant's rights and the public interest. *Id.* We determined that less severe options would have adequately ad-dressed the trial court's concern over a witness who would not be able testify based upon his own recollection, but would instead recite what the prosecutor might have told him during a recess. *Id.* We noted that the trial court could have terminated the witness's testimony, stricken the testimony, held a separate hearing to determine the witness's competence, or continued the trial. *Id.* at 207–08, 857 P.2d at 591–92.

Dec. 401, 427, 534 N.E.2d 583, 609, *appeal denied*, 126 Ill.2d 562, 133 Ill.Dec. 672, 541 N.E.2d 1110 (1989); *Commonwealth v. Richenburg*, 401 Mass. 663, 675, 518 N.E.2d 1143, 1150 (1988); *see generally* 75B Am. Jur.2d *Trial* § 1690; L.S. Tellier, Annotation, *Right to Have Reporter's Notes Read to Jury*, 50 A.L.R.2d 176 (1956); *People v. Pierce*, 56 Ill.2d 361, 364, 308 N.E.2d 577, 578 (1974).

For example, in *Pierce*, the Illinois Supreme Court held that a trial court properly denied a jury's request for the testimony of the victim and the arresting officer. *Id.* at 365, 308 N.E.2d at 579. The court noted in relevant part:

> The trial court will have . . . full knowledge of the case. It will know the charges against the accused, the witnesses and their supporting or defeating testimony and other evidence which may have been presented. It will be in a position to assess the request and judge whether a review of testimony, considering the circumstances, will be helpful or hurtful to the jury's proper deliberations. This question of review, like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion.

*Id.* at 364, 308 N.E.2d at 578.[9]

■ In the instant case, Defendant argues that the trial court failed to consider the alternative of providing the transcript of Officer Wheeler's testimony to the jury. We disagree. The trial court denied the jury's request because a transcript of Officer Wheeler's testimony may not have been helpful to the jury in determining the value of the allegedly stolen items.

First, the court noted that: (1) the issue before the jury was a simple one; (2) the evidence was presented to the jury in just one full day; and (3) the jury had been deliberating for a full day and a half. On that basis, the court could have reasonably concluded that the jury was hopelessly deadlocked because of a true inability of the jury to agree on the value of the allegedly stolen items. Given that the amount of evidence was not tremendously voluminous and that only a short time had passed since Officer Wheeler had testified, the record supports the trial court's discretionary refusal to conduct a "read back" of Officer Wheeler's testimony.

Second, although the jury requested Officer Wheeler's testimony because it was "split on whether value was established beyond a reasonable doubt," Officer Wheeler's testimony was not crucial to show the value of the items allegedly stolen by Defendant. Officer Wheeler testified that: (1) he was present during the recovery of the allegedly stolen items; (2) he could not individually identify, from a photograph of the merchandise, the different items allegedly taken by Defendant; and (3) the price tags on the items could not be seen in the photograph. Other witnesses also testified regarding the value of the items stolen. Two loss prevention officers, Cazinha and Strikolis, testified that each item recovered from Defendant had a price tag. Strikolis further testified that she made a list of all the items recovered from Defendant and that the total value of the items was $548.94. On that basis, the court could have reasonably concluded that Officer Wheeler's testimony may not have even been helpful to the jury in determining the value of the allegedly stolen items. Therefore, because the court did not arbitrarily deny the jury's request for a transcript of Officer Wheeler's testimony, we hold that the trial court did not abuse its discretion.

### 2. *Reinstructing the Jury*

Defendant also contends that manifest necessity did not support the mistrial because

---

9. In exercising its discretion to grant a jury's request for the transcript of a witness's testimony, a trial court should find the following considerations instructive, but not exclusive: (1) the nature and issues of the case; (2) the significance of the witness's testimony to the prosecution or to the defense; (3) the nature and length of the witness's testimony; (4) the number of witnesses who have testified; (5) the length of the trial and the period of time that the jury has deliberated; and (6) the potential prejudice to the parties. *See Coleman*, 179 Ill.App.3d at 455, 128 Ill.Dec. at 430, 534 N.E.2d at 611 (citation omitted). The trial court's reasons for granting or denying the jury's request should be clearly set forth in the record.

the trial court failed to consider the alternative of polling and reinstructing the jury regarding its duty to deliberate towards arriving at a unanimous verdict. Standard jury instruction 8.02 (the instruction) requested by Defendant provides:

A verdict must represent the considered judgment of each juror, and in ·order to return a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.

Each of you must decide the case for yourself, but it is your duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violating your individual judgment. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest belief as to the weight or effect of evidence for the mere purpose of returning a verdict.

We note that a trial court is obligated to exercise its broad discretion to obtain a verdict from a jury where the jury reports that it is unable to reach a verdict. *Moriwake*, 65 Haw. at 55, 647 P.2d at 712. We review the issue whether a trial court sufficiently exercised its discretion to obtain a verdict from a deadlocked jury under an abuse of discretion standard. *Moriwake*, 65 Haw. at 56, 647 P.2d at 712.

In the instant case, the trial court considered but refused to reinstruct the jury noting, "the jury has not asked for any copy of any of the instructions [sic], . . . so unless they ask I will not invade the province of the jury by sending something that they have not asked for."[10] As further evidence that the court did not fail to consider the alternative of reinstructing the jury, the court noted:

---

**10.** We note and emphasize that the question whether the trial court should have reinstructed the jury regarding its duty to arrive at a unanimous verdict—as set forth in Hawai'i Standard Jury Instructions Criminal (HAWJIC) (1991), Instruction No. 8.02—would never have arisen in the first place if, at the commencement of deliberations, the trial court had supplied the jury with complete written copies of its instructions, as requested by the parties and revised and/or augmented by the trial court in accordance with the provisions of Hawai'i Rules of Penal Procedure (HRPC) Rule 30 (1981).

It has always been the position of this court that the trial court may provide the jury with written copies of "the given instructions holus bolus[,] without separation or markings to indicate who requested them," so long as (1) the copies have "been previously examined by counsel" and (2) counsel have expressly agreed that the copies are accurate transcriptions of the instructions that the trial court actually read to the jury. *State v. Peters*, 44 Haw. 1, 6, 352 P.2d 329, 332 (1959). *See also State v. Lester*, 64 Haw. 659, 670, 649 P.2d 346, 354 (1982); *State v. Pokini*, 55 Haw. 640, 655, 526 P.2d 94, 107 (1974). It is common knowledge that the foregoing practice is routinely, albeit inconsistently, followed in the trial courts of this state, and we can think of no good reason why the practice should not be observed in *all* cases.

Indeed, the American Bar Association's *Standards Relating to Juror Use and Management* (rev. ed. 1993) [hereafter, ABA Standards] have resoundingly endorsed this very practice. Standard 16(c)(ii) provides in relevant part that "instructions should be recorded or reduced to writ-

ing and made available to the jurors during deliberations." The commentary to Standard 16(c) is right on the mark in its explication of the policy underlying the recommendation:

This section reflects the growing concern that jurors do not fully understand their role as triers of fact or the relevancy of the judge's instructions on the law. Jury instructions are the means for communicating to the jury the legal basis upon which its verdict is to rest. The instructions should be formulated and presented with primary concern for facilitating the jurors' understanding of the questions they must decide. A study of jury instructions reported that, on the average, jurors understand only about 50 percent of the instructions on the law. The study concluded that jurors arrive at compromise verdicts because they either do not comprehend the relevant law or misapply the law to the facts in the case. . . .

The standard recognizes that courts have a responsibility to take measures that facilitate jurors' understanding. Because jury instructions perform a crucial function in advising jurors of the law on which their verdict should be based and the procedures they should follow, they must be formulated and presented in a manner that is easy to understand. Accordingly, the standard recommends that instructions be . . . presented in a manner understandable to laypersons. *To further aid comprehension, a written copy or tape recording of the instructions should be provided to jurors when they enter upon their deliberations.* . . . ABA Standards § 16(c) commentary at 147–48 (footnotes omitted) (emphasis added).

We submit that it is the rare (or nonexistent) judge or lawyer who could recite, from memory,

sending in just one instruction is like asking the jury to reconsider and sort of arm twisting, so I will not send in just one instruction. Apparently, from all indications, the jury does understand the instruction given by the court to them, because at no time did they request any copies of any of the court's instructions.

Therefore, because the trial court reasonably concluded that reinstructing the jury during deliberation might have placed undue pressure on the jury, we hold that the court did not abuse its discretion in refusing to reinstruct the jury.

## IV. CONCLUSION

For the foregoing reasons, we hold that the trial court sufficiently considered alternatives less severe than a mistrial. Accordingly, we hold that the trial court's declaration of a mistrial was supported by manifest necessity and affirm the trial court's order denying Defendant's motion to dismiss the complaint.

a complete set of jury instructions with any acceptable degree of accuracy. To expect this feat of lay jurors is nothing short of wishful thinking.