129 P.3d 1144

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Louis STANLEY, Defendant–Appellant.**

**No. 26234.**

Intermediate Court of Appeals of Hawai'i.

Nov. 16, 2005.

As Amended Nov. 23, 2005.

John H. Murphy, on the briefs, for Defendant–Appellant.

Tracy Murakami, Deputy Prosecuting Attorney, County of Kaua'i, on the briefs, for Plaintiff–Appellee.

WATANABE, ACTING C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Louis Stanley (Stanley) appeals from the Judgment filed on January 27, 2004 in the District Court of the Fifth Circuit, Hanalei Division (district court).[1] After a bench trial, the district court found Stanley guilty of Violation of Restraining Order or Injunction Against Harassment, in violation of Hawaii Revised Statutes (HRS) § 604–10.5(h) (Supp.2004).[2]

---

1. The Honorable Trudy K. Senda presided.

2. Hawaii Revised Statutes (HRS) § 604–10.5 (Supp.2004) provides in relevant part:

> § 604–10.5 Power to enjoin and temporarily restrain harassment. (a) For the purposes of this section:
>
> "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.
>
> "Harassment" means:
>
> . . . .
>
> (2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.
>
> (b) The district courts shall have power to enjoin or prohibit or temporarily restrain harassment.
>
> . . . .
>
> (h) A knowing or intentional violation of a restraining order or injunction issued pursuant to this section is a misdemeanor. The court shall sentence a violator to appropriate counseling and shall sentence a person convicted under this section as follows:
>
> (1) For a violation of an injunction or restraining order that occurs after a conviction for a violation of the same injunction or restraining order, a violator shall be sen-

The district court sentenced Stanley to a term of imprisonment of five days and to probation for one year.

On appeal,[3] Stanley contends (1) there was insufficient evidence to support his conviction; and (2) the district court erred in (a) denying his motion for judgment of acquittal, (b) denying his motion to limit and strike testimony pursuant to Hawaii Rules of Evidence (HRE) 404(b), and (c) allowing the State to "re-call" a witness on rebuttal.

## I.

On July 20, 2001, an "Order Amending Order Granting Petition for Injunction Against Harassment Filed on August 9, 2000, and Granting Mutual Restraining Order Against Harassment" (Restraining Order) was filed in the district court. Stanley and Gary Ziegler[4] stipulated to the mutual Restraining Order, which became effective on August 9, 2000 for a period of three years.

The Restraining Order stated in relevant part:

3(b). The Petitioner(s) [Stanley] and any other person acting on behalf of the Petitioner(s) are hereby restrained and enjoined from:

1. contacting, threatening, or physically harassing Respondent(s) [Ziegler] and/or any person(s) residing at Respondent's residence;

2. telephoning the Respondent(s);

3. entering and/or visiting the premises, including yard, and garage of the Respondent's residence and place of employment.

On February 20, 2002, Stanley was charged by complaint with intentionally or knowingly violating the Restraining Order for an incident that occurred on or about December 22, 2001 involving Ziegler. What occurred during the incident is in dispute.

At trial on September 10, 2003, Ziegler testified that on December 22, 2001, he was driving to the Hanalei Dolphin Restaurant/Fish Market when he saw Stanley's car pulling out of the parking lot of the Hanalei Dolphin. Ziegler testified that Stanley had his window down and was "hanging out the window flipping me off, yelling at me and then he peeled out and shot gravel all over my truck as he left." By "flipping me off," Ziegler meant "showing [Ziegler] the middle finger." Ziegler testified that Stanley looked right at him and yelled "[f]uck you, you asshole." The incident lasted about "three to four seconds."

Ziegler testified that he "wasn't happy about [Stanley's conduct]," but he "tried to keep everything cool." Ziegler did nothing in response. Ziegler testified that he "laugh[s] off whatever Mr. Stanley does basically" and does not "get angry with it." Af-

tenced to a mandatory minimum jail sentence of not less than forty-eight hours; and (2) For any subsequent violation that occurs after a second conviction for violation of the same injunction or restraining order, the person shall be sentenced to a mandatory minimum jail sentence of not less than thirty days.

The court may suspend any jail sentence, except for the mandatory sentences under paragraphs (1) and (2), upon appropriate conditions, such as that the defendant remain alcohol and drug-free, conviction-free, or complete court-ordered assessments or counseling. The court may suspend the mandatory sentences under paragraphs (1) and (2) where the violation of the injunction or restraining order does not involve violence or the threat of violence. Nothing in this section shall be construed as limiting the discretion of the judge to impose additional sanctions authorized in sentencing for a misdemeanor offense.

(i) Nothing in this section shall be construed to prohibit constitutionally protected activity.

3. The opening brief of Defendant–Appellant Louis Stanley (Stanley) fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(3) in failing to include in some instances in the statement of the case "record references supporting each statement of fact or mention of court … proceedings." Stanley's brief also does not comply with HRAP Rule 28(b)(4) in that each point of error does not state "(ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency." Stanley's counsel is warned that future non-compliance with HRAP 28 may result in sanctions against him.

4. Gary Ziegler's last name was misspelled as "Ziggler" in the "Order Amending Order Granting Petition for Injunction Against Harassment Filed on August 9, 2000, and Granting Mutual Restraining Order Against Harassment" (Restraining Order).

ter the incident, Ziegler called the police and reported what had happened. Ziegler confirmed that everything he testified to occurred on "this island" (Kaua'i).

After Ziegler testified, Stanley moved for a judgment of acquittal, arguing the State failed to meet its burden of proof that Stanley violated HRS § 604–10.5 because Stanley did not physically harass, threaten, or contact Ziegler. The State countered that even though there was not physical contact between Stanley and Ziegler, there was still contact that was threatening or harassing to Ziegler. The district court denied Stanley's motion for judgment of acquittal.

Stanley testified that Ziegler was the one who had harassed him. He testified that on December 22, 2001, as he was leaving the Hanalei Dolphin, he was waiting in his pickup truck to turn left onto Kuhio Highway when he saw Ziegler approaching in Ziegler's car. When Ziegler saw Stanley, Ziegler pulled his vehicle next to Stanley's car and stopped. Ziegler had his window rolled down. Stanley's windows were up. Stanley testified that Ziegler "started laughing at me, flipped me off and said he wants to fight, said fuck you." Stanley did not give Ziegler "the finger" or say or do anything. Stanley testified that he waited for the cars to pass on Kuhio Highway and then drove left. Stanley called the police about half an hour later.

On cross-examination, the State questioned Stanley:

Q [State] And you, when you saw Mr. Ziegler, you felt like, oh, here we go again?

A [Stanley] I didn't feel anything. I don't, I see him, I just—I see him, that's all.

Q You don't do anything *when you see Mr. Ziegler* on the highway?

A No, I don't.

Q You don't roll out, or roll down your window and stick your head out and yell at him?

(Emphasis added.) Stanley objected, claiming the questioning was irrelevant. The district court overruled his objection.

The State continued its cross-examination of Stanley, asking, "So, Mr. Stanley, *you never did* roll down your window, lean out,

yell, stick the finger at Mr. Ziegler, you *never do that?*" (Emphasis added.) Stanley again objected, claiming the question was vague as to time and "if it's any other time other than this time, then it's irrelevant." The district court overruled the objection.

The State continued to question Stanley:

Q [State] Prior to this incident, December 22nd, 2001, *you never did that* to Mr. Ziegler when you saw him on the roadways?

A [Stanley] No, I did not.

Q So, your testimony would be that even after this incident, *you never done that* to Mr. Ziegler, correct?

(Emphasis added.) Stanley objected that the questions were irrelevant. The district court overruled the objection and allowed the questions for the purpose of testing the witness's credibility under HRE Rule 608.

Ziegler testified on rebuttal. The State questioned Ziegler:

Q [State] Okay. This incident, the December 22nd, 2001, prior to this incident, you've passed Mr. . . . Stanley on the highway here in Hanalei, correct?

A [Ziegler] Yes, I have, and in Haena, yes.

Q And *when you pass each other* on the highway, is your driver's side window down or up?

(Emphasis added.) Stanley objected to the questioning, arguing it was unduly time-consuming and also violated HRE Rule 404 because the questioning concerned a prior bad act, which cannot be used to show action in conformity therewith unless notice in advance of trial has been given or unless during trial good cause is shown. The district court sustained the objection for "the purposes of any intended prior acts usage," but allowed the testimony for impeachment purposes. The State continued asking Ziegler about prior instances in which Ziegler had passed Stanley along the highways or roads in Hanalei. The district court allowed Stanley to have a "running objection" as irrelevant and unduly time consuming to the line of questioning.

During recross-examination, Ziegler testified that at least a half dozen times during the last two and one-half years when Stanley passed him on the road, Stanley would hang out his window, flip Ziegler off, and yell and scream at him. Ziegler testified that at the prior court hearing he told his attorney about the incidents and gave his attorney a picture of Stanley "doing it."

Stanley objected and moved to strike Ziegler's testimony regarding the picture as a violation of HRE 404(b) because the State had not disclosed the information to the defense. The prosecutor stated that Ziegler had given the photograph to the State in July 2003. The district court did not allow the picture into evidence because "it was not timely tendered to the defense" under HRE Rule 404(b) and the State did not show good cause "for not providing [the picture] as additional discovery to the defendant." However, the district court denied Stanley's request to strike Ziegler's testimony.

The parties stipulated that if Stanley testified again on rebuttal, he would dispute all of the testimony given on rebuttal by Ziegler.

The district court found the testimony of Ziegler regarding the events on December 22, 2001, credible; that, based on Ziegler's testimony, Stanley's conduct constituted contact prohibited by the Restraining Order; and the State met its burden of proof beyond a reasonable doubt. The district court found Stanley guilty as charged. Stanley timely appealed.

## II.

### A. Sufficiency of Evidence

 The standard of review on appeal for sufficiency of the evidence is substantial evidence.

> We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether

there was substantial evidence to support the conclusion of the trier of fact. Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

*State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)[.]

*State v. Eastman*, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (internal quotation marks and brackets omitted).

### B. Motion for a Judgment of Acquittal

 The standard to be applied by the trial court in ruling upon a motion for a judgment of acquittal is whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

*State v. Keawe*, 107 Hawai'i 1, 4, 108 P.3d 304, 307 (2005) (brackets omitted) (quoting *State v. Pone*, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995)).

### C. Admissibility of Evidence

 In *State v. West*, 95 Hawai'i 452, 24 P.3d 648 (2001), the Hawai'i Supreme Court stated:

[D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong stan-

dard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.

*Id.* at 456–57, 24 P.3d at 652–53 (quoting *Kealoha v. County of Hawaii,* 74 Haw. 308, 319–20, 844 P.2d 670, 676 (1993)).

■ "A trial court's determination that evidence is 'relevant' within the meaning of HRE Rule 401 (1993) is reviewed under the right/wrong standard of review." *State v. St. Clair,* 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003). In contrast,

> Evidentiary decisions based on HRE Rule 403, which require a "judgment call" on the part of the trial court, are reviewed for an abuse of discretion. HRE 404 represents a particularized application of the principle of HRE 403 (see Commentary to HRE 404), and we will employ the same abuse of discretion standard of review.

*State v. Richie,* 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998) (internal quotation marks, citations, and footnotes omitted).

## D. Harmless Error

■ Hawai'i Rules of Penal Procedure (HRPP) Rule 52(a) provides, in relevant part, that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The Hawai'i Supreme Court has stated that "[s]uch error, however, should not be viewed in isolation and considered purely in the abstract. It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled." *State v. Sprattling,* 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002) (internal quotation marks, citation, and brackets in original omitted). Under the harmless error standard, this court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Pauline,* 100 Hawai'i 356, 378, 60 P.3d 306, 328 (2002) (internal quotation marks and cita-

tion omitted). "If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." *State v. Gano,* 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted).

## E. Cross–Examinations

■ The scope and extent of cross and recross-examination of a witness is within the sound discretion of the trial judge. Under this standard, we will not disturb the trial court's exercise of its discretion unless it is clearly abused. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.

*State v. Jackson,* 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996) (internal quotation marks and citations omitted).

## III.

### A. Sufficiency of the Evidence

■ Stanley argues that the State did not prove venue beyond a reasonable doubt, in violation of HRS § 701–114 (1993).[5] He argues that "[t]he only evidence of jurisdiction adduced by the state during trial" was during direct examination when the State asked Ziegler whether everything he testified to occurred on "this island" (Kauai) and Ziegler replied that it had. However, as the State notes in its answering brief, since December 20, 1995, venue in any criminal matter in the district courts lies "in any district within the judicial circuit in which the district court is located." *State v. Kwak,* 80 Hawai'i 297, 307, 909 P.2d 1112, 1122 (1995). Hence, in the instant case, the State did prove venue beyond a reasonable doubt.

■ Stanley also contends there was insufficient evidence to support his conviction

---

5. HRS § 701–114 (1993) provides in relevant part:

> **§ 701–114 Proof beyond a reasonable doubt.** (1) Except as otherwise provided in Section 701–115, no person may be convicted

of an offense unless the following are proved beyond a reasonable doubt:

> . . . .
>
> (d) Facts establishing venue[.]

for violating the Restraining Order. Stanley argues that HRS § 604–10.5*(b)* (Supp.2004) gives the district court the power to enjoin and temporarily restrain "harassment" only and since Ziegler was not actually "harassed" as defined by the statute, Stanley should not have been convicted. Stanley also states that he "was charged with a violation of HRS 604–10.5. That is all." However, Stanley was charged with and convicted under HRS § 604–10.5*(h)*. That subsection states in relevant part:

> § 604–10.5 **Power to enjoin and temporarily restrain harassment.**
>
> . . . .
>
> (h) A knowing or intentional violation of a restraining order or injunction issued pursuant to this section is a misdemeanor. The court shall sentence a violator to appropriate counseling and shall sentence a person convicted under this section[.]

The district court issued the mutual Restraining Order to Ziegler and Stanley that prohibited the men from "contacting, threatening, or physically harassing" each other or engaging in other types of conduct. The district court found that "based on the testimony of Mr. Ziegler in terms of the events which occurred on December 22, 2001, Court finds that the testimony of Mr. Ziegler regarding events on that date is credible." The district court also found that

> the conduct of the defendant, Louis Stanley, in looking at Mr. Ziegler[,] flipping the bird and showing his middle finger to Mr. Ziegler and saying words to the effect of fuck you asshole constituted *contact* which is prohibited by the restraining order.

(Emphasis added.) Hence, the district court found that Stanley's having *contacted*, not harassed, Ziegler amounted to a violation of the Restraining Order.

Neither the Restraining Order nor any Hawai'i state statute or case provides a definition of "contact." However, *State v. Wise*, 107 Hawai'i 67, 109 P.3d 708 (App.2005), provides some insight into the meaning of the word. In *Wise*, the defendant was convicted of violating a temporary restraining order (TRO) that his estranged wife had gotten against him. *Id.* at 68, 109 P.3d at 709. The TRO ordered the defendant to refrain from contacting the plaintiff, as follows:

> 1. Do not threaten or physically abuse the Plaintiff or anyone living with the Plaintiff.
>
> 2. Do not *contact*, write, telephone, or otherwise electronically *contact* (by recorded message, pager, etc.) the Plaintiff, including where the Plaintiff lives or works.
>
> 3. Do not visit or remain within 100 yards of any place where the Plaintiff lives or works. Do not violate this order even if the Plaintiff invites you to be at the place where the Plaintiff lives or works.
>
> . . . .
>
> 4. Do not have *contact* with: [The Plaintiff]

*Id.* (emphasis added; bolding omitted). After the TRO was issued, the defendant drove by the home of the man with whom his wife was living at the time and saw his wife and the man at the end of the man's driveway. *Id.* at 69, 109 P.3d at 710. The defendant "pulled his vehicle over alongside the driver's side of the man's car," while shouting angrily at the man. *Id.* The defendant "then looked directly at [his wife], made eye contact with her, and yelled, 'I'm gonna get bitch, you know, you ass in Fiji tonight,' " meaning that the defendant was going to have his wife deported. *Id.* at 69–70, 109 P.3d at 710–11.

Although the man yelled at the defendant to leave, the defendant "backed his car up, pulled over alongside the passenger's side of the man's car, and angrily yelled more of the same" at his wife. *Id.* at 70, 109 P.3d at 711. The defendant's wife warned the defendant that he was violating the TRO and threatened to call the police. *Id.* The defendant drove off. *Id.* The wife "was left scared and shaking." *Id.* This court found that "there was . . . substantial evidence that [the defendant] intentionally or knowingly contacted [his wife] in the car." *Id.* at 71, 109 P.3d at 712.

The defendant's yelling at his wife from his car in *Wise* is similar to Stanley's yelling at Ziegler from his car in the instant case.

The Massachusetts Appeals Court in *Commonwealth v. Butler*, 40 Mass.App.Ct. 906,

661 N.E.2d 666 (1996), also provided guidance in defining "contact." In *Butler*, the defendant had a restraining order against him, ordering him "not to contact [Caruso] either in person, by telephone, in writing, or otherwise, either directly or through someone else." *Id.* at 906, 661 N.E.2d at 666. After the restraining order had been issued, Caruso discovered that the defendant had anonymously arranged for flowers to be delivered to her. *Id.* The Appeals Court found that, by having the flowers sent, the defendant had "achieved a communication with Caruso amounting to 'contact.' " *Id.* at 907, 661 N.E.2d at 667.

The *Merriam–Webster's Collegiate Dictionary* (10th ed.2000) defines "contact" as "an establishing of communication with someone or an observing and receiving of a significant signal from a person or object." *Id.* at 248. It defines "communication" as "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." *Id.* at 232. In light of these definitions, Stanley's yelling and "giving the finger" clearly constitute an "establish[ment] of communication" by Stanley with Ziegler and, thus, constitute "contact." Stanley's "peeling out" and "shooting gravel" onto Ziegler's truck, although more oblique, could also be construed as a form of communication.

■ In the instant case, the district court found the testimony of Ziegler was credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses . . .; this is the province of the trier of fact." *State v. Mattiello,* 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (internal quotation marks, citation, and brackets omitted) (quoting *State v. Stocker,* 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999)).

Furthermore, the district court in the instant case found that Stanley's "flipping the bird and showing his middle finger to Mr. Ziegler and saying words to the effect of fuck you asshole constituted contact which is prohibited by the restraining order." "The test on appeal is . . . whether there was substantial evidence to support the conclusion of the trier of fact." *Eastman,* 81 Hawai'i at 135, 913 P.2d at 61. " 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Pone,* 78 Hawai'i at 265, 892 P.2d at 458. With regard to the latter finding, it was not unreasonable for the district court to find that Stanley's acts constituted "contact."

Therefore, we conclude there was substantial evidence to convict Stanley of the crime charged.

### B. Judgment of Acquittal

■ Stanley contends the district court erred by denying his motion for judgment of acquittal. The district court denied Stanley's motion, stating that "[c]ontacting is one of the types of conduct that is prohibited under the order, the mutual order of protection, and the testimony regarding looking at, flipping the bird to and uttering the words fuck you asshole, the Court considers to be contact." After closing arguments, the district court determined that Stanley made "contact" with Ziegler in violation of the Restraining Order and the "contact" was not constitutionally protected conduct and found Stanley guilty. Based on the evidence in the light most favorable to the State, substantial evidence existed to support the conviction, and the district court did not err in denying Stanley's motion for judgment of acquittal.

### C. Testimony

■ Stanley contends the district court erred in denying his motion to limit and strike the testimony of Ziegler. Stanley argues that Ziegler's testimony included evidence of Stanley's alleged "prior bad acts," in violation of HRE Rule 404 (Supp.2004).[6]

**6.** Hawaii Rules of Evidence (HRE) Rule 404 (Supp.2004) provides in relevant part:

> **Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.** (a) Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the

purpose of proving action in conformity therewith on a particular occasion, except:

> . . . .
>
> (3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, 609, and 609.1.

The district court allowed the testimony for impeachment purposes pursuant to HRE Rule 608, but not for "intended prior acts usage." Stanley contends the evidence was not "probative of untruthfulness" and was therefore inadmissible.

Rule 608 states in relevant part:

**Rule 608 Evidence of character and conduct of witness.**

. . . .

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking the witness' [sic] credibility, *if probative of untruthfulness,* may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence.

(Emphasis added.)

In *State v. Jones,* 62 Haw. 572, 617 P.2d 1214 (1980), Jones was convicted by a jury of rape and sodomy. *Id.* at 573, 617 P.2d at 1216. During trial, Jones "filed a motion seeking leave of the trial court to cross-examine the complainant regarding her past sexual experiences." *Id.* at 577, 617 P.2d at 1219. In his motion, Jones alleged that the sexual conduct of the complainant was "relevant to attacking the credibility of the complaining witness." *Id.* at 578, 617 P.2d at 1219. The trial court denied the motion as offered, but permitted Jones to ask the complainant one question: "Have you, prior to the time of the alleged incident, had (sic) engaged in sexual intercourse with anyone else?" *Id.*

Jones appealed his conviction, *id.* at 573, 617 P.2d at 1216, challenging it in part "on the ground that his rights under the Confrontation Clause and to due process ha[d] been violated." *Id.* at 577, 617 P.2d at 1218–

19. On appeal, the Hawai'i Supreme Court held:

> In the present case, no rational connection between the complainant's alleged past sexual experience and her capacity for truth and veracity has been established, and we therefore hold that such evidence is inadmissible on the issue of her general credibility. Such evidence could not, in the circumstances of this case, have had a possible bearing on her capacity to tell the truth. To hold otherwise would be to lend validity to the spurious assumption that a woman who has had some past sexual experience is generally less believable in cases involving sexual crimes than one who has not had that experience.

*Id.* at 579, 617 P.2d at 1219–20 (citation omitted).

*Mayo v. Attorney General,* 528 F.Supp. 833 (D.Hawai'i 1981), aff'd, 692 F.2d 595 (9th Cir. 1982), described another type of evidence that could not be introduced for impeachment purposes: the improper giving of a gift. Mayo was indicted for rape and kidnapping by a Maui grand jury. *Id.* at 834. Before his trial began, the trial judge told Mayo's counsel and the prosecutor, *in camera,* that Mayo and Mayo's woman friend had attempted to give the judge a gift at his home. *Id.* No objection was made by either party to the judge's continuing to sit on the case. *Id.* at 835. That same day, the jury panel was sworn in, voir dire undertaken by counsel, opening statements made, and two prosecution witnesses examined. *Id.* The trial was then recessed for the day. *Id.*

The following day, before trial was reconvened, the State "advised the judge and defense counsel that, if Mayo were called, he would be cross-examined concerning the gift he offered to the judge." *Id.* The trial judge

---

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall

provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

The State did not provide Stanley "reasonable notice in advance of trial ... of the date, location, and general nature" of Stanley's alleged "prior bad acts," and the district court did not excuse "pretrial notice on good cause shown" for prior bad act evidence to be admissible under HRE Rule 404(b).

disqualified himself from the case and, on that basis, called a mistrial. *Id.*

Mayo's case was transferred to another judge's calendar and subsequently dismissed on double jeopardy grounds. *Id.* The Hawai'i Supreme Court reversed the dismissal, holding that "the trial court did not abuse its discretion in declaring a mistrial." *Id.* at 835–36. Mayo was retried and a hung jury resulted. *Id.* at 836. After a third trial, Mayo was convicted of rape. *Id.*

After Mayo exhausted all his available state judicial remedies, he filed a writ of habeas corpus before the United States District Court for the District of Hawai'i under 28 U.S.C. § 2254. *Mayo*, 528 F.Supp. at 836. Mayo argued that his conviction was obtained in violation of his rights under the double jeopardy clause of the Fifth Amendment to the United States Constitution. *Mayo*, 528 F.Supp. at 834. The District Court held that Mayo's "second and third trials, and his ultimate conviction, were in violation of his rights under the double jeopardy clause." *Id.* at 838. The District Court cited HRE Rule 608(b) in holding that

> it is evident that, were Mayo cross-examined, he could not have been questioned concerning his attempt to give Judge Fukuoka a gift, for such evidence would have no bearing upon the "defendant's capacity for truth and veracity." At most, the prosecution would have been attempting to impeach the credibility of the defendant by bringing in evidence of the defendant's "bad acts." Such evidence is clearly inadmissible.

*Mayo*, 528 F.Supp. at 837.

In *United States v. Geston*, 299 F.3d 1130 (9th Cir.2002), Geston, a police officer with the Department of Defense, was involved in an altercation with Seaman Apprentice Hernandez aboard the U.S.S. Rentz. *Id.* at 1133. Geston's and Hernandez's testimonies regarding the incident conflicted. *Id.* at 1133–34.

Prior to his first trial, Geston filed a motion in limine to introduce evidence that Hernandez had been previously "involved in two violent incidents after drinking alcohol." *Id.* at 1137. The first incident occurred in Mexico while Hernandez was on shore leave. *Id.* Hernandez returned to the ship and said he had been "attacked by a security guard at a hotel and severely injured the guard in self defense." *Id.* The second incident occurred in San Diego, where Hernandez "reportedly 'choked out' another crew member, and was charged with assault." *Id.* The United States District Court for the Southern District of California denied the motion to introduce evidence of the incidents. *Id.* The first trial resulted in a mistrial. *Id.* at 1134.

During Geston's second jury trial, he challenged the earlier denial of his motion, but "to no avail." *Id.* at 1134 & 1137. Geston was convicted of "unreasonable use of force under the color of law" and "assault with a dangerous weapon resulting in serious bodily harm." *Id.* at 1133.

Geston appealed his conviction to the United States Court of Appeals for the Ninth Circuit. *Id.* at 1133. Geston contended the "district court's denial of his opportunity to cross-examine Hernandez about the two confrontations violated Federal Rule of Evidence [FRE] 608(b)."[7] *Geston*, 299 F.3d at 1137. The Ninth Circuit held that neither of the prior incidents involving Hernandez constituted conduct that was probative of Hernandez's "character for untruthfulness or his credibility." *Id.* The Ninth Circuit concluded that "the district court did not abuse its discretion in excluding the proffered evidence under Rule 608(b)." *Geston*, 299 F.3d at 1137.

Unlike evidence of a witness's past sexual conduct, improper giving of a gift, or prior violent incidents, evidence of a witness's forgery has been held to be "probative of untruthfulness." In *State v. Culkin*, 97 Hawai'i 206, 35 P.3d 233 (2001), police officers went to Culkin's house in response to a disturbance call. *Id.* at 212, 35 P.3d at 239. Following an argument during which Culkin

---

7. The Commentary to HRE 608 states that the rule is identical to Federal Rules of Evidence Rule 608 except that the HRE rule contains the added language "and bias, interest or motive as provided in rule 609.1" in subsection (b). Moreover, the Commentary adds, "[t]his added language does not modify the intended effect of Fed.R.Evid. 608."

stabbed and killed his brother, Culkin was charged with murder in the second degree and reckless endangering in the second degree. *Id.* at 211–12, 35 P.3d at 238–39. During the search of Culkin's house, the police found forged identifications under the names of Harold Cross and others. *Id.* at 219, 35 P.3d at 246. Culkin was subsequently charged with one count of second degree forgery in a separate criminal case and was scheduled for trial on the forgery charge after the murder trial. *Id.*

In the murder and reckless endangering case, the State filed a motion indicating its intent to confront Culkin with evidence that Culkin had opened a checking account under the Harold Cross name, had used the name Harold Cross to rent his house, and had several other identification cards. *Id.* Culkin objected, and the circuit court ruled that if Culkin testified, the State could question him about the use of the state identification in the name of Harold Cross that had been used to open the bank account and rent his house, but the State was precluded from questioning Culkin about the other identification cards. *Id.* at 219–20, 35 P.3d at 246–47.

At Culkin's trial on the murder and reckless endangering charges, he testified that he had used the name Harold Cross to open a checking account and rent his house because his credit was bad. *Id.* at 220, 35 P.3d at 247. He also testified that his brother had made the Harold Cross identification card for him and he had just sat for the picture on the card. *Id.* The circuit court ruled that Culkin had opened the door for the State to impeach him with evidence that he possessed other identification cards, and the court "permitted the State to question Culkin about a federal identification under the name Harold Cross and a state identification under the name Paul Polinski." *Id.*

Culkin appealed his convictions for reckless manslaughter and reckless endangering in the second degree to the Hawai'i Supreme Court. *Id.* at 210–11, 35 P.3d at 237–38. On appeal, he argued that "the circuit court erred by allowing the prosecution to impeach Culkin with pending forgery charges, thus forcing him to assert his fifth amendment privilege in front of the jury." *Id.* at 211, 35

P.3d at 238. The Hawai'i Supreme Court disagreed. *Id.* at 221, 35 P.3d at 248. The supreme court cited HRE Rule 608(b) in determining that

> the circuit court did not abuse its discretion by permitting the prosecution to question Culkin about the state Harold Cross identification. Inasmuch as there were no witnesses to the stabbing, this case turned in large part on Culkin's credibility. The possession of false identification cards, and assorted activities undertaken therewith, were probative of untruthfulness.

*Culkin,* 97 Hawai'i at 221, 35 P.3d at 248 (footnote omitted). However, the supreme court held that the circuit court abused its discretion by allowing the State to question Culkin about the other identification documents. *Id.* at 222, 35 P.3d at 249.

In *United States v. Jackson,* 882 F.2d 1444 (9th Cir.1989), the Ninth Circuit held that evidence of a witness's past fraud was admissible for purposes of impeachment. *Id.* at 1447. Jackson was convicted of one count of conspiracy, ten counts of making fraudulent tax claims, and ten counts of mail fraud. *Id.* at 1445. Jackson and co-defendant John Speidel had devised a scheme to receive fraudulent tax refunds. *Id.*

At trial, "Laura Speidel [Laura], the daughter of John Speidel, testified that Jackson called her father and left a four-digit number that was for a 'p.o. box.' She also testified about her participation in this scheme." *Id.* at 1446. The trial court prohibited Jackson from cross-examining Laura about her participation with her father in other fraudulent transactions. *Id.*

On appeal from his conviction, Jackson argued that the district court abused its discretion when it prohibited him from cross-examining Laura about her participation with her father in other fraudulent schemes. *Id.* The Ninth Circuit concluded that "Jackson correctly points out that evidence of a witness' [sic] participation in fraudulent transactions is probative of truthfulness." *Id.* The Ninth Circuit held that "the trial court properly could have admitted evidence of Laura Speidel's participation in the fraud." *Id.* at 1447.

As these cases illustrate, when HRE Rule 608(b) refers to "specific instances of the conduct of a witness ... probative of untruthfulness," it means instances of conduct that in some way involve untruthfulness. As the Commentary to HRE Rule 608 indicates, subsection (b) "allows cross-examination of the witness relative to specific collateral conduct *to the extent that such conduct is relevant to veracity*." (Emphasis added). In other words,

> [t]he subject matter of the inquiry must have some rational bearing upon the defendant's capacity for truth and veracity. And where the testimony sought to be elicited is of minimal value on the issue of credibility and comes into direct conflict with the defendant's right to a fair trial, the right of cross-examination into those areas must yield to the overriding requirements of due process.

*State v. Pokini*, 57 Haw. 17, 22–23, 548 P.2d 1397, 1400–01 (1976) (citations omitted). "When the prior crime has nothing to do with dishonesty, there may be no logical connection whatsoever between the prior crime and the determination of whether the defendant may be believed." *State v. Santiago*, 53 Haw. 254, 259, 492 P.2d 657, 661 (1971).

Stanley's past conduct when passing Ziegler on the road or highway was not "probative of untruthfulness" under HRE Rule 608(b). It had "nothing to do with dishonesty." *Santiago*, 53 Haw. at 259, 492 P.2d at 661. It was therefore error on the part of the district court to admit such evidence for the purpose of attacking Stanley's credibility, to allow the State to inquire about such conduct in the cross-examination of Stanley, and to admit testimony of Ziegler as to this conduct.

"In a jury-waived trial, the judge is entitled to greater discretion in question-ing witnesses and hearing evidentiary motions because, in such cases, there is no possibility of jury bias." *State v. Arakawa*, 101 Hawai'i 26, 33, 61 P.3d 537, 544 (App. 2002). However, the district court convicted Stanley upon finding the testimony of Ziegler credible, and, therefore, by implication the district court found Stanley's testimony not credible. We conclude there was a reasonable possibility the district court's error in admitting testimony as to Stanley's alleged "prior bad acts" contributed to his conviction and was not harmless beyond a reasonable doubt. *State v. Gano*, 92 Hawai'i at 176, 988 P.2d at 1168.

### D. Rebuttal Testimony

Stanley contends the district court erred in allowing the State to call Ziegler on rebuttal. Stanley argues that the questions the State asked Ziegler on rebuttal should have been asked during the case-in-chief. Because the questions were not asked in the case-in-chief, Stanley argues that Ziegler's testimony prejudiced Stanley.

Hawaii Rules of Evidence Rule 608(b) provides:

> (b) Specific instances of conduct. *Specific instances of the conduct of a witness,* for the purpose of attacking the witness' [sic] credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, *may be proved by extrinsic evidence.*

(Emphasis added.) The State argues that the "1993 Supplemental Commentary to the rule notes that if the witness .... denies the material ..., then the trial court conducts a balancing test under HRE Rule 403 [8] to determine whether the admission of the evidence is more probative than prejudicial to the defendant." [9] The State contends the

---

8. HRE Rule 403 provides:

> **Rule 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

9. This comment appears to come from the 1992 Rule 608 Supplemental Commentary, which states:

> If the witness admits on cross-examination having committed the prior misdeed, then there is no need for the extrinsic evidence and Rule 403 will exclude it. Even if the witness denies the material, the Rule 403 balance is expected to dictate exclusion in a substantial number of cases. After all, the previous blan-

"trial court acted within its discretion in admitting Ziegler's rebuttal testimony extrinsic evidence, that [Stanley] had done those things prior to the incident in question."

However, as previously discussed, the evidence regarding Stanley's conduct while passing Ziegler on the road or highway was not "probative of untruthfulness" under HRE 608(b) and should not have been admitted.

## IV.

Therefore, the Judgment filed on January 27, 2004 in the District Court of the Fifth Circuit, Hanalei Division, is vacated and this case is remanded for a new trial before a different judge.

ket ban was purportedly informed by Rule 403. *But if the probative value of the extrinsic evidence of specific prior misdeeds is not substantially outweighed by the negative Rule 403 fac-* tors, it is admissible "in the discretion of the court." (Emphasis added.)