**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000341
23-FEB-2021
07:51 AM
Dkt. 43 SO**

NO. CAAP-19-0000341

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
RICKY R. KUSUMOTO, also known as Ricky R.S. Kusumoto,
Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DCW-18-0004147)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Nakasone, JJ.)

Defendant-Appellant Ricky R. Kusumoto, also known as Ricky R.S. Kusumoto (**Kusumoto**), appeals from the Judgment and Notice of Entry of Judgment, entered on March 15, 2019, in the District Court of the First Circuit, Honolulu Division (**District Court**).[1/] Following a bench trial, Kusumoto was convicted of Terroristic Threatening in the Second Degree (**TT2**), in violation of Hawaii Revised Statutes (**HRS**) § 707-717(1).[2/] He was sentenced

---

[1/] The Honorable Philip Doi presided.

[2/] HRS § 707-717(1) (2014) provides:

> A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716 [Terroristic threatening in the first degree].

HRS § 707-715(1) (2014) states, in relevant part:

> A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person . . . :
>
>> (1)   With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

to one year of probation with conditions that included a 60-day jail term.

On appeal, Kusumoto contends that: (1) it was plain error to admit testimony from the complaining witness (**CW**) that Kusumoto killed her rabbit; and (2) Kusumoto's trial counsel (**defense counsel**) provided ineffective assistance by failing to properly object to the CW's testimony about the rabbit and by asking Kusumoto about the rabbit on direct examination.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Kusumoto's contentions as follows.

## I.   BACKGROUND

The TT2 charge stemmed from an incident in which Kusumoto allegedly threatened to kill the CW, his girlfriend. Although the CW recanted at trial, her original statement about the incident is summarized in a police report signed by the CW on December 15, 2018, at 10:31 a.m., which describes the following events:

On December 15, 2018, the CW woke up Kusumoto at 7:30 a.m. to tell him she was going to return to her house and would be back in a few days. Kusumoto responded, "If you leave I'll kill you." Kusumoto then grabbed a knife and approached the CW on the bed saying, "You're not leaving." The CW got up to leave, but Kusumoto swung the knife at the CW and cut her nose. The CW pushed Kusumoto away and left the room. The CW explained that they were arguing about money, and that she felt afraid and "serious that [Kusumoto] would kill" her, and she left the house and called the police.

At trial on December 26, 2018, the CW recanted, testifying instead that she used the knife to slice her own nose to frame Kusumoto. In light of the recantation, on January 1, 2019, the State filed a notice of intent to use evidence of Kusumoto's "other crimes, wrongs or acts" (**Notice**). Through the Notice, the State sought to offer evidence of several alleged instances of prior acts of abuse by Kusumoto, each documented by

2

a separate police report.[3/]  The Notice stated in part:  "This evidence is offered pursuant to Hawaiʻi Rules of Evidence (**HRE**) Rules 403, 404(b), 608, 609, 613(b), and 802.1(1), State v. Clark, 83 Hawaiʻi 289, 926 P.2d 194 (1996), and State v. Eastman, 81 Hawaiʻi 131, 912 P.2d 57 (1996), as evidence of the context of the relationship between [Kusumoto] and [the CW] to explain [the CW's] recantation at trial."  While the Notice described the prior acts of abuse in some detail, it did not identify or describe any incident in which Kusumoto allegedly killed the CW's rabbit.

Trial continued on March 15, 2019, at which time the State played recordings of the CW's December 15, 2018 911 phone call and her interview with police that same day.  The State also questioned the CW about the police reports identified in the Notice, including a report she made regarding an incident on May 24, 2018.  During her testimony regarding this incident, which follows, the CW stated that Kusumoto had killed her rabbit:

> Q [by the State] Okay. And in that [police] statement you noted that you thought that [Kusumoto] thought you were flirting with men, but you were taking pictures of your rabbit.  Do you recall making that statement?
>
> A  Yes.
>
> Q  And was that statement true?
>
> A  Yes.
>
> Q  Okay.  So that part of the statement was true?
>
> A  Yes.
>
> Q  Okay.  So he did think that you were flirting with men?
>
> A  Yes.
>
> Q  But you were --
>
> A  Yes.
>
> Q  -- taking pictures of your rabbit?
>
> A  Huh?
>
> Q  You were taking photographs of your rabbit?
>
> A  Yes.

---

[3/]     The memorandum accompanying the Notice also sought to introduce the CW's 911 recorded phone call and a recorded interview with police about the December 15, 2018 incident, as substantive evidence of Kusumoto's guilt.

. . . .

    Q  Okay.  And how old is your rabbit now?

    A  He would be three today.

    Q  What do you mean by "would be"?

    A  Um, [Kusumoto] killed him[.]

Defense counsel did not object to the latter two questions or move to strike the CW's answers.

On redirect examination, the State asked the CW about the rabbit again, at which point defense counsel objected "as to relevance." The District Court overruled the objection in the following exchange:

    Q [by the State] You know, when I was asking you about the incident that occurred on the beach, May 24, 2018, you talked about your rabbit.

    A  Yes.

    Q  And at one point you said that [Kusumoto] killed your rabbit?

    A  Yes.

    Q  Can you talk about that? What happened?

    **[Defense Counsel]: Your Honor, I'm gonna object to this as to relevance. This is -- this case isn't about a rabbit.**

    **[State]: It is about the credibility of this witness.**

    **THE COURT: Okay. Um, overruled.**

    Q BY [the State]: What happened with the rabbit?

    A  Well, he gave me two stories.

    Q  What were they?

    A  He said he snapped his neck was the first story.

    Q  Okay. And the second?

    A  And then the second story was he threw him against the wall.

    Q  Did he say why?

    A  Because he was mad at me.

    Q  And why was that?

    A  Because I didn't come home.

(Emphasis added.)

4

When the defense presented its case, Kusumoto testified on direct examination about the December 15, 2018 incident as follows:  He awoke and found three piles of feces from the dogs, so he asked the CW to help him clean it up, but she refused because she wanted to get coffee.  Kusumoto "lost it" when the CW said she was going home and would not get him coffee.  However, he did not threaten to kill the CW and did not cut her with a knife.

Defense counsel also questioned Kusumoto about the rabbit, as follows:

> Q [by Defense Counsel] So let's talk about the -- the rabbit briefly.  Okay?
>
> A  Yeah.
>
> Q  So–
>
> A  That -- that -- she broke my heart.  She broke up with me, and I just took it out on the rabbit, you know.  Hey, man, I feel -- I couldn't live with myself.  I -- I talked to -- other mental health workers up at Diamond Head Mental Health Clinic.  I go there.  And I talked to them, spill my guts that I couldn't live with myself.  Over there too, I couldn't live with myself.  Even to this day, you know, I go in the backyard just to look at the burial plot.  So I see the rocks there.  I --
>
> Q  Okay.
>
> A  I think about the moment that I lost it.  It's not -- it wasn't healthy.
>
> Q  Okay.
>
> A  Did --
>
> A  And I don't ever want to go that far ever again.
>
> Q  Do you regret?
>
> A  I regret.

During closing arguments, the State did not mention the rabbit.  However, defense counsel briefly stated that Kusumoto "was straight up about killing [the CW]'s rabbit when he was angry."

## II.  DISCUSSION

Kusumoto contends that the testimony regarding "the killing of the rabbit" (**the rabbit testimony**) was inadmissible because it was irrelevant under HRE Rule 401, more prejudicial than probative under HRE Rule 403, and improper character

evidence under HRE Rule 404.  He also argues that the State failed to give reasonable notice that it intended to offer such evidence at trial, as required by HRE Rule 404(b).

In Clark, the Hawaiʻi Supreme Court held:

> [W]here the complaining witness recants his or her pre-trial accusation [of abuse] against the defendant, evidence of prior acts of domestic violence involving the complaining witness and the defendant is admissible, subject to the HRE [Rule] 403 balancing test, to show the jury the context of the relationship between the victim and the defendant, where the relationship is offered as a possible explanation for the complaining witness's recantation at trial.

83 Hawaiʻi at 303, 926 P.2d at 208.  See State v. Asuncion, 110 Hawaiʻi 154, 165-66, 129 P.3d 1182, 1193-94 (App. 2006) (evidence of prior acts of domestic violence was admissible where the defendant's girlfriend recanted a portion of the statement she gave to police regarding abuse by the defendant).

The State contends that the rabbit testimony, like the evidence of prior domestic abuse in Clark, was admissible "to show CW's relationship with Kusumoto as a possible explanation for her recanting at trial."  More specifically, the State argues:

> CW's testimony that Kusumoto killed her rabbit because he was mad that she did not come home makes the fact that CW was in an abusive relationship with Kusumoto more probable. The context of that relationship makes it more probable that CW would recant her original report to protect Kusumoto from being convicted.

While this argument is consistent with the reasoning in Clark, it does not by itself establish the relevance of the CW's testimony as to Kusumoto's "two stories" about *how* he killed the rabbit, or the basis for the admissibility of that testimony under HRE Rule 404(b).

Moreover, the State does not adequately explain its alleged failure to comply with the notice requirement of HRE Rule 404(b) with respect to *any* of the rabbit testimony.  This issue is dispositive.  HRE Rule 404(b) provides that, "[i]n criminal cases, the proponent of evidence to be offered under [HRE Rule 404(b)] *shall provide reasonable notice* in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial."  (Emphasis added.) See State v. Pond, 118 Hawaiʻi 452, 462-67, 193 P.3d 368, 378-83

(2008) (concluding that the notice requirement of HRE Rule 404(b) "protects parties and the jury trial system from falling prey to opposing counsel's trial tactics and strategies that do not promote a fair trial.")

Here, following the CW's recantation during trial, the State gave notice of its intention to offer evidence of prior acts of domestic violence by Kusumoto. The Notice expressly stated that the evidence was offered pursuant to, among other things, HRE Rule 404(b) and Clark, "as evidence of the context of the relationship between [Kusumoto] and [the CW] to explain [the CW's] recantation at trial." On appeal, the State argues that the rabbit testimony was relevant and admissible on the same basis.[4] See supra; see also Clark, 83 Hawaiʻi at 299-303, 926 P.2d at 204-08 (analyzing proffered evidence of prior acts of domestic violence under HRE Rules 403 and 404(b)). Yet the Notice did not say that the State intended to offer evidence about Kusumoto killing the CW's rabbit. Thus, the rabbit testimony should not have been admitted into evidence under HRE Rule 404(b).

The District Court, however, admitted the rabbit testimony without any objection from the defense on this ground, i.e., lack of notice.[5] We therefore review the admission of the rabbit testimony for plain error. See Hawaiʻi Rules of Penal Procedure Rule 52(b). The supreme court has summarized the plain error standard as follows:

> It is firmly established that the relevant inquiry when evaluating whether a trial court's plain error may be noticed is whether the error affected substantial rights. Thus, a reviewing court has discretion to correct plain error when the error is not harmless beyond a reasonable doubt.
>
> . . . .

---

[4]    The State also argues that the rabbit testimony was separately admissible as evidence of the character of a witness, i.e., the CW, under HRE Rule 404(a)(3), which does not contain a notice requirement. However, in the District Court, the State did not offer evidence of Kusumoto's prior acts of domestic abuse under HRE Rule 403(a)(3) and, given the circumstances, we decline to recognize the rabbit testimony as evidence of the CW's character. See Pond, 118 Hawaiʻi at 468, 193 P.3d at 384.

[5]    In fact, the defense did not object to the rabbit testimony on any ground when it was first elicited. See supra.

> . . . If there is **a reasonable possibility that the error contributed to the conviction**, the error is **not harmless beyond a reasonable doubt**, and the **conviction must be set aside**.

State v. Ui, 142 Hawaiʻi 287, 297, 418 P.3d 628, 638 (2018) (citations, footnotes, and internal quotation marks omitted; emphases added).

Following closing arguments, the District Court found Kusumoto guilty of TT2. In rendering its decision, the District Court stated, in relevant part:

> [A]s both sides have argued, the -- **it comes down to the credibility of the witnesses as many cases do.**
>
> . . . .
>
> . . . Mr. Kusumoto said, well, that's when he lost it, when he, uh, noticed the dog feces, uh, which I can understand. That's -- that's not what you want to wake up to. Uh, but [the CW] never mentioned the dogs or any dog feces. Uh, it seems a little odd to me that the thing that started the argument at 6:30 or so in the morning, uh, is not mentioned at all.
>
> . . . [M]y impression of the testimony is in line with what [the State] has argued, uh, that, uh, [the CW's] recantation of her report as evidenced by the interview with Detective Mikki appears to be an afterthought. The . . . original recitation of the events,[ ]description of the events made on December 15th, and, uh, and then recorded in . . . Exhibit No. 2 . . . also on December 15, 2018, uh, appear to be the accurate -- appear to me to be the accurate renditions of the -- of the events and I am convinced beyond a reasonable doubt that the State has proven its case.

(Emphasis added.)

Thus, the District Court's determination of Kusumoto's guilt "c[ame] down to the credibility of the witnesses." While the District Court did not expressly mention the rabbit testimony in this context,[6/] that testimony appears to have been offered

---

[6/] Following Kusumoto's conviction, the District Court briefly referred to the rabbit testimony in sentencing Kusumoto. Specifically, after Kusumoto asserted that he was "not really a hostile guy," the District Court stated, in relevant part:

> All right. Well, uh, okay. I mean . . . there's been no dispute regarding the fact that you may have some anger issues. You've said that yourself.
>
> . . . [A]s far as hostility goes . . . taking your anger out on the rabbit does seem to be a bit extreme. . . on the other hand . . . your past criminal record does not indicate, uh, a great deal. Uh, yes, motions to revoke probation, but we don't know the -- one was dismissed and we don't really know the disposition of the other and we don't

(continued...)

8

under HRE Rule 404(b) and Clark to explain the CW's recantation at trial. See supra. In addition, when defense counsel raised a relevance objection to the second instance of the rabbit testimony, the District Court overruled the objection following the State's assertion that "[i]t is about the credibility of this witness." On this record, we conclude there is a reasonable possibility that the error in admitting the rabbit testimony contributed to Kusumoto's conviction. Therefore, the error was not harmless beyond a reasonable doubt and the conviction must be set aside. See Ui, 142 Hawaiʻi at 297, 418 P.3d at 638; State v. Jones, 148 Hawaiʻi 152, 171, 468 P.3d 166, 185 (2020).

Given our conclusion, we do not reach Kusumoto's second issue on appeal.

Therefore, the Judgment and Notice of Entry of Judgment, entered on March 15, 2019, in the District Court of the First Circuit, Honolulu Division, is vacated and this case is remanded for a new trial before a different judge.[7]

DATED: Honolulu, Hawaiʻi, February 23, 2021.

On the briefs:                          /s/ Keith K. Hiraoka
                                        Presiding Judge
Jonathan Burge
for Defendant-Appellant.
                                        /s/ Clyde J. Wadsworth
Sonja P. McCullen,                      Associate Judge
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.                 /s/ Karen T. Nakasone
                                        Associate Judge

---

[6] (...continued)
know the reasons why.

. . . Um, but I will agree with [the State] that it is a serious situation. I understand you disagree with my decision, . . . and that's fine.

. . . [S]o I don't think the one year is appropriate based upon your prior record . . . you say you are undergoing counseling or [defense counsel] echoed that. Um, I'm going to say 60 days in jail.

[7] Although we believe the District Court could be fair, under the circumstances, we conclude "the appearance of justice would be better served if this case were remanded to a different judge." State v. Domut, 146 Hawaiʻi 183, 195, 457 P.3d 822, 834 (2020); see State v. Stanley, 110 Hawaiʻi 116, 129, 129 P.3d 1144, 1157 (App. 2005).