**Electronically Filed
Supreme Court
SCWC-14-0000358
25-OCT-2016
07:50 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

ROYCE C. GOUVEIA,
Petitioner/Defendant-Appellant.

SCWC-14-0000358

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000358; CR. NO. 12-1-1474)

OCTOBER 25, 2016

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ., WITH
NAKAYAMA, J., DISSENTING

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to determine whether the trial court erred in declaring a mistrial based on jurors' concerns about their safety. Defendant Royce Gouveia was charged with manslaughter and tried before the Circuit Court of the First

Circuit.[1]  After deliberating, the jurors sent several notes to the court.  The first note stated:  "We reached a verdict."  Another note expressed concern for their safety because a man on the prosecutor's side of the courtroom had been "glaring and whistling at [Gouveia]."  The circuit court conducted voir dire of the jurors to determine what, if any, effect the incident had on them.  The circuit court then declared a mistrial based on manifest necessity.  Gouveia subsequently filed a motion to dismiss, asserting that the circuit court's finding of manifest necessity and declaration of a mistrial was erroneous, and that further prosecution was prohibited on double jeopardy grounds.  The circuit court denied the motion.

Gouveia appealed the denial of his motion to dismiss to the Intermediate Court of Appeals (ICA).  The ICA affirmed the circuit court, State v. Gouveia, CAAP-14-358 (App. Apr. 30, 2015) (mem.), and Gouveia then petitioned this court to review the ICA's judgment.

We conclude that the circuit court did not abuse its discretion in concluding that there was manifest necessity for a mistrial because the presumption of prejudice was not overcome beyond a reasonable doubt.  Accordingly, the ICA's June 4, 2015 judgment on appeal is affirmed.

## I. Background

On September 25, 2012, an altercation occurred in which

---

[1]  The Honorable Glenn J. Kim presided.

Gouveia struck Albert Meyer, causing Meyer to fall and hit his head on the pavement.  Meyer was taken to the hospital by ambulance and pronounced brain dead two days later.  Gouveia was arrested and charged with manslaughter for recklessly causing the death of Meyer in violation of Hawaiʻi Revised Statutes (HRS) § 707-702(1)(a).

On the afternoon of June 6, 2013, the same day the State and Gouveia made their closing arguments in Gouveia's trial, the jury sent two simultaneous communications to the circuit court.  Communication No. 3, signed at 2:20 p.m., stated: "We reached a verdict."  Communication No. 2, signed four minutes later, stated:  "Concern.  This morning on prosecutor's side of courtroom there was a man, shaved head, glaring and whistling at defendant.  We have concern for our safety as jurors."

The circuit court told the State and Gouveia, "My intention, unless counsel . . . can persuade me otherwise, is just to take no action on this[.]"  However, both counsel agreed that the court should question the jurors "[a]s to its effect, if any, on their deliberations and their verdict[.]"  The circuit court then determined that, before opening the verdict, it would allow counsel to voir dire the jurors individually and would also ask questions directly.

Before questioning the jurors, the circuit court asked counsel whether they knew anything about the occurrence to which Communication No. 2 referred.  Defense counsel stated that he was

3

not aware of anything that had happened. The Deputy Prosecuting Attorney (DPA) stated that she did not see anything, but was aware that Meyer's brother had been in the courtroom that morning, was "pretty upset," and had a shaved head.

## A. Questioning of the Jurors Regarding Communication No. 2

The circuit court questioned all twelve jurors individually. Four jurors stated that they witnessed an individual seated on the prosecutor's side of the courtroom whistling and/or glaring at Gouveia. The incident was brought up in the jury room, where some of the jurors who observed the incident stated that they "were a little bit scared." When Juror No. 4 was asked by the court, "So I take it you have concern for your safety," she replied, "Yes."

Seven jurors indicated that the discussion of the incident occurred before the verdict, ranging from within ten minutes of commencing deliberation to the end of deliberation. At least four of these jurors indicated that the discussion occurred at the beginning of deliberations and that it was one of the first topics discussed. All twelve jurors stated that neither the incident itself nor the discussions of it affected their own decision, but when Juror No. 11 was asked if the incident "appear[ed] to have an impact on other people's decision[,]" she replied that "[i]t did."

## B. The State Moves for a Mistrial

After all of the jurors had been questioned, the

circuit court asked both the State and Gouveia if they wanted the court to take any further action.  Gouveia said no, but the State moved for a mistrial.

The State argued there was a manifest necessity to declare a mistrial because the topic of the man glaring and whistling at Gouveia had come up during deliberations, no one had remarked that it was an improper topic for the jury to consider, and, based on the statement made by Juror No. 11, the topic had seemed to influence the other jurors.  The State noted that approximately five of the jurors had said that the topic of the incident came up during deliberations, i.e., before the jury had reached its verdict.  Thus, according to the State, the verdict was "tainted."

The State also argued that it was important that at least three jurors said the topic of the incident came up at the beginning of the deliberations because, along with the fact that the jurors decided to write a communication to the court after reaching a verdict, it implied that it was important to some of the jurors.

Gouveia argued that because the court had instructed the jurors that they had to decide the case based solely on the evidence presented, and each of the jurors said that the discussion did not impact their decision, there was no manifest necessity.

The circuit court determined that it was required to

look at the totality of the circumstances and find beyond a reasonable doubt that the jurors' concern for their personal safety had no impact on any of the twelve jurors' decisions. If it could not find that beyond a reasonable doubt, then there would be manifest necessity requiring a mistrial.

The circuit court then orally granted the State's motion for mistrial:

> [W]hen I . . . apply my reason and common sense to this that at least some of these jurors have . . . what strikes me as a really serious concern for their personal safety and it came up according to, at least as I count, four or five of them, it [was] . . . one of the first topics of discussion when they got back in the room and started deliberating the case. Somebody brought it up and they started talking about it. It frankly beggars my reason and common sense that it would have no bearing on the deliberations in this case and therefore the verdict.
>
> I'm going to grant the State's motion for mistrial. I'm going to find there's manifest necessity for such based on what I said . . . and everything else that's been put on the record, including my questions to counsel.
>
> The verdict's going to be sealed for future purposes, if any, but obviously we're not going to take the verdict. I'm declaring a mistrial and I'm finding manifest necessity for that, because I don't think there's anything short of a mistrial . . . that can cure it. The verdict's tainted, in my view, based on my findings.
>
> And to be explicit about it, as the finder of fact, I don't find it credible that all 12 of these people despite the answer they gave me about no impact on their decision, I think at least one, and probably more than one of them . . . had these serious concerns about their safety. It really beggars my reason and common sense that it could not have had any impact on their deliberations and decision in this case.

The circuit court later added:

6

> So the record's clear and [Defense Counsel] has this
> appellate issue if it becomes one in the future, I am
> importing that standard from the juror misconduct
> cases in my ruling here . . . . And I'm finding that
> I cannot find beyond a reasonable doubt that there was
> no impact on the deliberations or verdict in this case
> such that the verdict was not tainted.

On October 22, 2013, the circuit court entered its findings of fact (FOFs), conclusions of law (COLs), and order granting the State's motion for mistrial. The circuit court made the following relevant FOFs:

> 9. Seven of the jurors indicated discussion of the
> incident occurred before the verdict, ranging from
> within ten minutes of commencing deliberation to the
> end of deliberation. At least four of these seven
> jurors indicated discussion of the incident occurred
> at the beginning of deliberations, specifically that
> it was one of the first topics discussed.
>
> 10. During the discussion of the incident prior to
> verdict, the jurors who actually observed the incident
> communicated to the other jurors fear for their own
> safety.
>
> 11. Some of the juror answers regarding Communication
> No. 2 and the incident included the following:
>
>> a. Some jurors were worried about retaliation;
>> b. The unidentified male's look appeared
>> hostile during the incident;
>> c. Some jurors were concerned;
>> d. Some jurors felt intimidated; and
>> e. The incident impacted other jurors'
>> decisions.
>
> 12. Although all twelve jurors indicated that neither
> the incident itself nor the discussion regarding the
> incident during the deliberations affected their own
> decision, at least one juror indicated that the
> incident appeared to have impacted the deliberation
> process and decision.
>
> 13. The incident was not part of the evidence in the
> case at hand.

7

14. The verdict was never taken for this case. At no point during the proceedings did the Court take, read or otherwise get any indication of the jury's verdict.

15. The Court finds that the jurors' statements that the incident did not affect their decision-making process and/or deliberations are not credible as evidenced by the plain language of Communication No. 2 and answers of the voir dire of each individual juror.

16. The Court further finds that the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt.

The court made the following relevant COLs:

5. Communication No. 2 raised the concern of the Court and both counsel that the incident may have substantially prejudiced the right to a fair trial. After further investigating the totality of circumstances surrounding Communication No. 2, the Court concluded at least some of the jurors were not credible, although explicitly indicated they were not lying. The Court's concern is that although all twelve jurors unanimously agreed to release Communication No. 2, no juror admitted that the incident affected their own decision-making process. Furthermore, reason and common sense dictates that the incident did have an effect on the deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable doubt[.]

. . . .

8. Under the totality of the circumstances in light of the plain language of Communication No. 2 and the voir dire of the individual jurors, the Court finds that the jury was not impartial in their [sic] deliberation and decision-making process. Based on the foregoing, there is no other remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict.

. . . .

8

> 10.  The incident underlying Communication No. 2 was both beyond the court's control and unforeseeable. Accordingly, based on Communication No. 2, and the totality of the circumstances, there is manifest necessity for a mistrial.

Gouveia filed a motion to dismiss based on double jeopardy, arguing that the circuit court erroneously found manifest necessity and, as such, "the continued prosecution of Defendant violates his federal and state constitutional rights against double jeopardy[.]"  The circuit court denied Gouveia's motion.[2]

## C.    Appeal to the ICA

Gouviea alleged two points of error to the ICA:  1) the circuit court abused its discretion in declaring a mistrial because manifest necessity was not present; and 2) the circuit court erroneously denied his motion to dismiss for violation of double jeopardy.

In a memorandum opinion, the ICA affirmed the circuit court's order denying Gouveia's motion to dismiss for violation of double jeopardy.  First, the ICA noted that Gouveia's primary argument was "his challenge to the Circuit Court's finding that the jurors' statements that the incident did not affect their decision making process and/or their deliberations were not credible."  However, the ICA disagreed with Gouveia, and deferred to the circuit court's findings that the jurors were not

---

[2]    Although it is apparent from the record that the parties believed the sealed verdict was "not guilty," this was not confirmed until the ICA unsealed the verdict on appeal.

9

influenced by the incident or the discussion:  "[T]he Circuit Court was in a better position than this court to assess the credibility of the jurors, understand the dynamics of the trial process in this case, and evaluate the effect that the external incident had on the jurors' deliberations."  Accordingly, the ICA held that the circuit court did not abuse its "broad discretion" in determining that manifest necessity existed for a mistrial.

The ICA also found that the circuit court had sufficiently considered alternative options to a mistrial when it concluded that "neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict."  The ICA further noted that, in any event, Gouveia had failed to argue on appeal that the circuit court erred in failing to consider options less severe than a mistrial.

The ICA also noted that there was a possible violation of Hawaiʻi Rules of Evidence (HRE) Rule 606(b), but that even if the circuit court violated this rule in allowing the jurors to be questioned regarding the effect of the incident and the discussion on their verdict, Gouveia had waived any such argument by failing to object to the questioning in the circuit court, failing to raise it as an issue on appeal, and in relying on the jurors' testimony in his appellate briefs.

The ICA rejected Gouveia's argument that the circuit court erroneously denied his motion to dismiss on double jeopardy

grounds because "[w]hen a trial court declares a mistrial that is supported by a proper finding of manifest necessity, 'retrial is not barred by the defendant's right against double jeopardy.'"

Chief Judge Nakamura dissented on the ground that "the Circuit Court's finding of manifest necessity was based on its erroneous view that such finding was per se required as a result of the jurors' expression of concern for their safety." The dissent agreed with the majority that any claim of error based on HRE Rule 606(b) was waived.

Gouveia sought review in this court, presenting three questions:

> 1.  Did a divided [ICA] erroneously affirm the trial court's declaration of a mistrial, at the request of [the State], over [Gouveia's] objection, before receiving a jury's not guilty verdict, based on "manifest necessity" when each juror indicated that his or her verdict was not influenced by an extra-judicial incident?
>
> 2.  Did a divided [ICA] erroneously affirm the trial court's denial of a Motion to Dismiss for Violation of Double Jeopardy based on the trial court's prior declaration of the mistrial?
>
> 3.  Did a divided [ICA] erroneously rely on testimony which should not have been permitted pursuant to Rule 606(b) of the [HRE]?

## II. Standards of Review

### A.   Declaration of Mistrial and Finding of Manifest Necessity

> A trial court's declaration of a mistrial is reviewed under the abuse of discretion standard. A determination of manifest necessity is likewise left to the sound discretion of the trial court. An abuse of discretion occurs when the decisionmaker exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a

11

party.

State v. Wilmer, 97 Hawai'i 238, 243, 35 P.3d 755, 760 (2001)

(citation and quotation marks omitted).

## B.   Denial of Motion to Dismiss for Violation of Double Jeopardy

"A mistrial is properly declared and retrial is not

barred by the defendant's right against double jeopardy where the

defendant consented to the mistrial or there was manifest

necessity for the mistrial."   Id. at 242-43, 35 P.3d at 759-60.

> The issue whether a reprosecution is barred by double
> jeopardy is a question of constitutional law.  We
> review questions of constitutional law by exercising
> our own independent constitutional judgment based on
> the facts of the case.  Accordingly, we review
> questions of constitutional law de novo under the
> right/wrong standard.

State v. Rogan, 91 Hawai'i 405, 411-12, 984 P.2d 1231, 1237-38

(1999) (citation and internal quotation marks omitted).

### III.   Discussion

## A.   The Circuit Court did not Rely on Improper Juror Testimony When it Concluded that Manifest Necessity Existed for a Mistrial

Gouveia argues in his application that pursuant to HRE

Rule 606(b), the circuit court should not have permitted the

jurors to be questioned about whether the incident or subsequent

discussion of the incident affected their decisions and that the

ICA's ruling that he had waived any claim of error based on HRE

Rule 606(b) was "unfair."   Gouveia argues that the incompetent

evidence violated his right to a fair trial and, without it,

there was no basis for the trial court's or the ICA's decisions.

12

HRE Rule 606(b) provides:

> Inquiry into validity of verdict or indictment.  Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received.

HRE Rule 606(b) is inapplicable to statements made prior to jurors reaching a verdict.  See State v. Bailey, 126 Hawai'i 383, 402 n.23, 217 P.3d 1142, 1161 n.23 (2012).  Once a verdict has been reached, however, "the court cannot consider the jurors' testimony as to the effect of the improper statement upon them."  State v. Kim, 103 Hawai'i 285, 291, 81 P.3d 1200, 1206 (2003) (citation and quotation marks omitted).  The court "can only consider whether such statement was made . . . and whether, given the statement, we can say that [the defendant] had a trial before an impartial jury."  Id.

Here, the court's questions to the jurors were appropriate, except for the questions regarding the effect of the incident on the verdict.  See id.  However, the court specifically found that it did not find the jurors' responses on that point to be credible, and in any event, the record indicates that the bases for the court's decision comported with the limitations imposed by HRE Rule 606(b).

For instance, in the written FOFs, the circuit court found that seven jurors indicated that discussion of the incident

13

occurred before the verdict.  At least four of these jurors indicated that the discussion occurred at the beginning of deliberations, and that it was one of the first topics discussed. It also found that the incident caused some jurors to feel concern, intimidation, and fear retaliation.  Based on these facts, the court found that "the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt."

In short, the court properly asked the jurors what occurred, their reaction to what occurred, whether the incident was discussed by some or all of the jurors, when it was discussed during deliberations, the length of the discussion, and what other jurors said about the incident.  Based on these answers, it concluded that there was manifest necessity for a mistrial. Accordingly, we do not agree with Gouveia that the circuit court relied on improper HRE Rule 606(b) testimony.[3]

**B.   The Circuit Court did not Abuse its Discretion in Finding that Manifest Necessity Existed for a Mistrial Because the Presumption of a Possibility of Unfairness was not Rebutted Beyond a Reasonable Doubt**

Gouveia argues that the circuit court abused its

---

[3]    The ICA concluded that Gouveia waived his HRE Rule 606(b) challenge by failing to object to the court's questioning of the jurors as to the effect of the incident on their decision-making.  Because we conclude that the bases for the court's decision comported with the limitations imposed by HRE Rule 606(b), we do not reach the waiver issue, or endorse the ICA's discussion of that issue.

14

discretion when it found there was manifest necessity for a mistrial. Specifically, Gouveia contends that each juror stated that their verdict was not influenced by the incident or subsequent discussions regarding it, that the jurors' concerns regarding their safety were "peripheral to Gouveia's guilt or innocence[,]" and that there was "no evidence that the incident was used as a circumstance against either party." Lastly, Gouveia adopts the argument in the ICA's dissent that "the circuit court's finding of manifest necessity was based on its erroneous view that such finding was per se required as the result of the jurors' expression of concern for their safety[.]"

We conclude that the circuit court did not abuse its discretion in deciding that manifest necessity existed for a mistrial because the presumption of prejudice could not be overcome beyond a reasonable doubt and no reasonable alternatives to a mistrial were available.

**1. The circuit court did not abuse its discretion in finding that, under the totality of the circumstances, manifest necessity existed to warrant a mistrial**

The right to a fair trial is guaranteed to both defendants and to the State. Although the defendant has a valued right to have his case concluded by a single tribunal,

> [b]ecause of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an

15

impartial jury.

State v. Quitoq, 85 Hawaiʻi 128, 124, 938 P.2d 559, 573 (1997) (emphasis added) (quoting Arizona v. Washington, 434 U.S. 497, 505 (1978)).

"A mistrial is properly declared and retrial is not barred by the defendant's right against double jeopardy where the defendant consented to the mistrial or there was manifest necessity for the mistrial." Wilmer, 97 Hawaiʻi at 242-43, 35 P.3d at 759-60. Manifest necessity is defined as "circumstances in which it becomes no longer possible to conduct the trial or to reach a fair result based upon the evidence." Id. at 244, 35 P.3d at 761 (quoting Quitoq, 85 Hawaiʻi at 143, 938 P.2d at 574). Hawaiʻi law states that termination of prosecution is not improper, and thus a defendant can be retried, when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the State[.]" HRS § 701-110(4)(b)(iii).

Therefore, manifest necessity protects the right to a fair trial for both the defendant and the State. See State v. Dequair, 136 Hawaiʻi 71, 91, 358 P.3d 43, 63 (2015).

In Wilmer, we noted that "[b]ecause manifest necessity is a high standard not to be declared lightly, a trial judge should record his or her reasons for declaring a mistrial and include the reasons for finding manifest necessity." 97 Hawaiʻi at 245, 35 P.3d at 762. Moreover, we stated that "it is

16

impossible to define all the circumstances that would render it proper to interfere by declaring a mistrial" and that "no standard can be applied mechanically or without attention to the particular problem confronting the trial judge." Id. at 244-45, 35 P.3d at 761-62 (citations, quotation marks, and brackets omitted). A determination of manifest necessity is left to the sound discretion of the trial court. Id. at 243, 35 P.3d at 760.

When circumstances arise that could influence the impartiality of the jury and thus affect the ability to reach a fair result based on the evidence, a rebuttable presumption of prejudice is raised. See id. at 244, 35 P.3d at 761; see also State v. Napulou, 85 Hawai'i 49, 55-56, 936 P.2d 1297, 1303-04 (1997). To overcome such a presumption, the trial court, after investigating the totality of the circumstances, must find that the outside influence on the jury was harmless beyond a reasonable doubt. Wilmer, 97 Hawai'i at 244, 35 P.3d at 762. If this influence cannot be proven harmless beyond a reasonable doubt, then the court must look at all reasonable alternatives to cure the harm before declaring a mistrial. State v. Minn, 79 Hawai'i 461, 465, 903 P.2d 1282, 1286 (1995).

In the present case, upon receiving Communication No. 2, both counsel recognized that the possibility of an improper influence existed and requested that the court question the jurors. This possibility of an improper influence created a rebuttable presumption of prejudice. Wilmer, 97 Hawai'i at 244,

35 P.3d at 762.  The circuit court agreed to the request, conducted voir dire of each juror individually, and allowed both the DPA and defense counsel to question the jurors.  Therefore, the issue here is whether the circuit court abused its discretion in finding that the presumption was not proven harmless beyond a reasonable doubt and no reasonable alternative to declaring a mistrial existed.[4]

After questioning the jurors regarding the incident in the courtroom, the circuit court found that the majority of the jurors indicated that discussion of the incident occurred prior to the verdict and that some jurors communicated fear for their own safety.  The circuit court also found that "the concern for personal safety as expressed by the jurors had an impact on the jurors' decisions based on the totality of the circumstances present and thus its effect on the subsequent verdict was not harmless beyond a reasonable doubt."

Based on these FOFs, the circuit court concluded that

_____

[4]     Gouveia argues that the circuit court found that manifest necessity was "per se" required due to the outside influence of the individual's behavior.  This argument is without merit.  The circuit court asked the DPA, "don't you think its per se an inappropriate extraneous circumstance that if the jurors have concerns for personal safety based on something they observed in the courtroom . . . that if it entered their discussions and had an impact on any of them, that it would taint the verdict?" (emphasis added).  It is clear that the court did not view the conduct as necessarily requiring a mistrial.  In FOF 16, for example, the court found that based on the "totality of the circumstances," the effect on the verdict "was not harmless beyond a reasonable doubt."  And in COL 10, the court concluded that "based on Communication No. 2, and the totality of the circumstances, there is manifest necessity for a mistrial."  Based on this record, we disagree with Gouveia and the dissent that the circuit court believed that its finding of manifest necessity was per se required as a result of the jurors' safety concerns.

18

even though no juror admitted that the incident affected their own decision-making process, "reason and common sense dictates that the incident did have an effect on the deliberations hence the impartiality of the jurors, which is not harmless beyond a reasonable doubt[.]"  The circuit court concluded that:

> [u]nder the totality of the circumstances in light of the plain language of Communication No.2 and the voir dire of the individual jurors . . . the jury was not impartial in their deliberation and decision-making process, [and] there is no other remedy short of a mistrial to cure the issue at hand as neither a continuance nor a further jury instruction would appropriately address the issue of an impartial jury and its subsequent tainted verdict.

In looking at the totality of the circumstances, including the discussion of the incident in the jury room and the likelihood that it was one of the first things discussed, the circuit court was well within its discretion to conclude that manifest necessity existed for a mistrial because the presumption of prejudice was not overcome beyond a reasonable doubt.  Cf. Bailey, 126 Hawaiʻi at (trial court should have granted a new trial based on a juror's remarks during deliberations, despite other jurors saying the remarks did not affect their verdict).

Gouveia contends the circuit court committed clear error because there was no evidence in the record that the incident affected the jurors' decision-making process and/or deliberations.  He bases this argument primarily on the fact that each of the twelve jurors stated that the incident did not affect his or her verdict, and asserts that without evidence to the

19

contrary, the court must presume the jury follows the court's instructions in not considering outside evidence or being influenced by emotion.

Gouveia's argument misconstrues the applicable law. Once there is a showing that an outside incident may have influenced the jury, there is a rebuttable presumption of prejudice that must be overcome beyond a reasonable doubt. Napulou, 85 Hawai'i at 55-56, 936 P.2d at 1303-04. A prima facie showing of improper influence is all that is required to raise that presumption. State v. Chin, 135 Hawai'i 437, 448, 353 P.3d 979, 990. Therefore, it is the possibility of improper influence that must be disproved. Id. It is Gouveia, then, who must show that the court abused its discretion in concluding that under the totality of the circumstances, the outside influence was not harmless beyond a reasonable doubt.

Gouveia compares the facts of this case to a similar circumstance which occurred in Napulou. In Napulou, the jury sent a communication to the court after some members of the defendant's family were seen entering the same parking lot as the jurors. The communication, sent immediately after the incident was mentioned in the jury room and prior to a verdict being reached, asked, "[i]f a guilty verdict is given, could there be a danger to some of us or has some arrangement been made for protection?" Napulou, 85 Hawai'i at 51-52, 936 P.2d at 1299-300. The trial court, after conducting voir dire of the jurors, found

20

the jurors could be impartial and denied Napulou's motion for a mistrial.  Id. at 54, 936 P.2d at 1302.  The ICA affirmed, finding that the trial court was empowered to assess the credibility of the jurors and that the record supported the conclusion that any improper comments were harmless beyond a reasonable doubt.  Id. at 56, 936 P.2d at 1304.

This case is distinguishable from Napulou.  Notably, the communication in Napulou occurred prior to the verdict, and thus the court could rely on the jurors self-assessment as to whether they could remain impartial.  See Bailey, 126 Hawai'i at 402 n.23, 217 P.3d at 1161 n.23.  The voir dire of the jurors in Napulou revealed that the concerns were "peripheral to the matter of Napulou's guilt or innocence" and that "the jurors paid little attention to members of Napulou's family."  Napulou, 85 Hawai'i at 56, 936 P.2d at 1304.  Further, the trial court found the jurors' assertions that "they could continue as impartial jurors, unaffected by the safety concerns that had disturbed them" to be credible.  Id.

In contrast, the jury communication in the instant case was a statement that the jurors were actually concerned for their safety, not merely inquiring into the possibility of danger.  Additionally, at least four jurors stated that the discussions of the incident and potential danger happened at the beginning of deliberations, which indicates those discussions could have had an effect on the subsequent jury deliberations.  Under these

21

circumstances, the circuit court was well within its discretion to conclude that under the totality of the circumstances, the outside influence was not harmless beyond a reasonable doubt.

### 2. No reasonable alternative to a mistrial would have eliminated the potential of prejudice

After determining that there was an outside influence on the jury, the circuit court was required to consider all reasonable alternatives that would be less severe than a mistrial. "When examining the record for evidence of manifest necessity, we must determine whether the trial court sufficiently considered . . . less severe options available and balance[d] the accused's rights against the public interest." Minn, 79 Hawaiʻi at 465, 903 P.2d at 1286.

In Napulou, the trial judge was able to question the jurors prior to a verdict being delivered. During this process, the court was able to alleviate any lingering concerns the jurors had regarding their safety. Cf. 85 Hawaiʻi at 56, 936 P.2d at 1297. This, along with the trial court's finding that the jurors' statements about being able to proceed without the outside influence affecting their deliberations were credible, allowed the court to proceed without concern for the impartiality of the jury.

In Wilmer, this court found that several instances of prosecutorial misconduct resulted in little actual prejudice to the defendant. 97 Hawaiʻi at 245, 35 P.3d at 762. The inappropriate conduct arose prior to jury deliberations, and the

22

trial court denied the defendant's request to proceed with the trial after finding that manifest necessity existed for a mistrial. Id. In reversing the trial court, we found "[w]hat little prejudice did result could have been cured through means other than a mistrial" and thus "the trial court abused its discretion in concluding there was manifest necessity for the mistrial because the circumstances creating an apparent need for a mistrial did not make it impossible for the trial to proceed." Id. at 245-46, 35 P.3d at 762-63.

Here, unlike in Napulou and Wilmer, the jury reached a verdict, informed the court that they had reached the verdict, then notified the court that there was a concern for their safety because of the incident. Under these circumstances, the circuit court determined that the verdict was already tainted and that neither a continuance nor additional jury instructions to ignore the outside influence would have been effective. This determination was reasonable.

Based on the facts of this case, the circuit court's determination that nothing short of a mistrial would have cured the potentially impartial jury was not an abuse of discretion.

C. **Because There was Manifest Necessity for a Mistrial, Retrial is not Barred by Double Jeopardy**

The final issue raised is whether the ICA erroneously affirmed the trial court's denial of Gouveia's motion to dismiss for violation of double jeopardy. "A mistrial is properly declared and retrial is not barred by the defendant's right

against double jeopardy where . . . there was manifest necessity for the mistrial." <u>Wilmer</u>, 97 Hawai'i at 242-43, 35 P.3d at 759-60. In light of our ruling that the circuit court was within its discretion in concluding that manifest necessity existed, retrial of Gouveia is not barred by double jeopardy.

## IV. Conclusion

The circuit court did not abuse its broad discretion in determining that manifest necessity existed for a mistrial. Accordingly, it appropriately denied Gouveia's motion to dismiss on double jeopardy grounds.

Therefore, the ICA's June 4, 2015 judgment on appeal is affirmed, but for the reasons stated herein.

| | |
|---|---|
| Keith S. Shigetomi for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Donn Fudo for respondent | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

